**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Corporation, Appellee,**

v.

**FURNITURE FORWARDERS OF ST. LOUIS, INC., and Alsco, Inc., Appellants.**

No. 19629.

United States Court of Appeals
Eighth Circuit.

Jan. 12, 1970.

Edward K. Fehlig, of Hocker, Goodwin & MacGreevy, St. Louis, Mo., who subsequently withdrew F. Neil Aschemeyer, St. Louis, Mo., for appellants.

Alan C. Kohn, of Coburn, Croft, Kohn & Herzog, St. Louis, Mo., for appellee.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

The Chicago, Rock Island and Pacific Railroad Company, plaintiff-appellee, hereafter referred to as the carrier, brought an action for collection of additional unpaid freight charges claimed to

be due from Furniture Forwarders of St. Louis, Inc. and Alsco, Inc., defendants-appellants, hereafter referred to as the shippers.[1] The claims grew out of 67 shipments of furniture that were moved in interstate commerce in batteries of boxcars between August 15, 1966 and March 2, 1967. The shipments were to delivery points on the West Coast.

The shippers had previously paid the freight charges provided for commodities generally rather than those applied to furniture under the published freight tariff.[2] The carrier claims that the amount due is $67,945.09.

There is no factual dispute of consequence. The shippers here contend that the district court was without jurisdiction inasmuch as the doctrine of primary jurisdiction necessarily invokes a first determination by the Interstate Commerce Commission as to the reasonableness of the rates and that proceedings before that body are presently being litigated. The shippers also contend that this action was barred by the doctrine of res judicata because of a former adjudication involving the same parties in a demurrage case.

The case was tried to Chief Judge Harper, United States District Judge for the Eastern District of Missouri, Eastern Division, sitting without a jury. The memorandum opinion of the district court is reported in 294 F.Supp. 417 (E.D.Mo.1968). Judge Harper found no necessity to decide the primary jurisdiction issue as the Commission had shortly before entry of the district court's judgment entered an order dismissing the shippers' complaint, holding that the rate invoked here was not "unjust, unreasonable, or otherwise unlawful." Additionally, Judge Harper held that the defense of res judicata was without merit and entered judgment for the carrier in the amount sued for. By reason of the Commission's subsequent and continuing proceedings as detailed hereafter, we remand on the primary jurisdiction issue and affirm the district court's conclusion as to inapplicability of res judicata.

*Primary Jurisdiction.*

The carrier's complaint asserting jurisdiction under 28 U.S.C.A. § 1337 was filed on December 5, 1967.[3] The shippers filed answer on December 18, 1967 setting forth as one of the defenses that the rates forming the basis of the carrier's charge are "unjust, unreasonable, discriminatory and unduly preferential," and that this issue had been submitted to the Commission on September 8, 1967 and is presently pending before said Commission in case I.C. No. 207201.[4] In a memorandum brief filed with the district court on March 15, 1968, the shippers urged the district court to take no further action in the case until the Commission had made a final determination of the rate issue before it. The parties presented their evidence and a final hearing was had before the district court on April 25, 1968 at which time the carrier's counsel was granted five days to reply to the theretofore filed

---

1. Furniture Forwarders was the shipper and Alsco was the owner of the goods shipped.

2. The freight rate for commodities generally at the time of the shipments in question was $2.45 per hundred pounds and the rate for furniture, which was an exception to the general rate, was $3.69 per hundred pounds. The record reflects that both rates have been slightly raised since the shipments were made.

3. 28 U.S.C.A. § 1337 provides:
   "The district courts shall have original jurisdiction of any civil action or pro-

ceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

4. The answer alleges that the matter was pending before H. S. Frey, Chief, Informal Cases Branch, as I.C. No. 207201. The I.C.C. opinion filed in the record in the instant case, however, is No. 34949 and was heard before Oren G. Barber, Hearing Examiner, and his findings and the Commission's opinion assert that the complaint was filed on September 12, 1968. There is no record explanation of this discrepancy.

shippers' brief and shippers' counsel was given five days thereafter to reply.

The order of the Commission above referred to was entered on November 7, 1968 and served on November 18, 1968 and numbered 34949. This order dismissed the shippers' complaint and found that the rate claimed by the carrier for furniture shipped in this fashion "is not shown to have been unjust, unreasonable or otherwise unlawful." It was not until after service of this order that the district court on November 27, 1968 filed its memorandum opinion and entered its judgment. This appeal was taken on December 27, 1968 and subsequently on June 27, 1969, acting on a petition for reconsideration, the Commission entered an order reopening its case No. 34949 for further hearing. This reopening order came some seven months after the Commission's original order and nearly that length of time after the judgment was rendered in the district court, and some six months after notice of appeal by the shippers to this court. Chief Judge Harper's opinion was undoubtedly correct based on the record before him at the time and he could not, of course, have had any inkling that the Commission might reopen the case several months subsequent to rendition of an apparently full-blown and well-considered opinion based upon a litigated issue, including as a party intervenor a company engaged in the business of receiving furniture. This intervenor appeared in support of the carrier's position.

Our problem then is to determine whether, under the doctrine of primary jurisdiction which is now deeply embedded in law, the court should stay its hand until there is a final determination of this issue by the Commission. We hold that it should. The issue is the reasonableness of the railroad rate involved, and so far as we know every court holds that this is a subject for initial determination by the Commission.

The landmark case giving birth to the doctrine of primary jurisdiction under the Interstate Commerce Act is Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907).[5] Mr. Justice White, who later became Chief Justice, authored the Court's opinion and said at page 444, 27 S.Ct. at page 356:

> "It was pointed out that by the effect of the act to regulate commerce it was peculiarly within the province of the Commission to primarily consider and pass upon a controversy concerning the unreasonableness *per se* of the rates fixed in an established schedule. It was, therefore, declared to be the duty of the courts, where the Commission had not considered such a disputed question, to remand the case to the Commission to enable it to perform that duty, a conclusion wholly incompatible with the conception that courts, in independent proceedings, were empowered by the act to regulate commerce, equally with the Commission, primarily to determine the reasonableness of rates in force through an established schedule."

The carrier cites such cases as Pennsylvania R. R. Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960); United States v. Western Pac. R. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., *supra*; Mc-

---

5. "The beneficient rule in the *Abilene Cotton Oil* case was evolved by reading the Interstate Commerce Act, 49 U.S. C.A. § 1 et seq., not as though it were a collection of abstract words, but by treating it as an instrument of government growing out of long experience with certain evils and addressed to their correction. Chief Justice White's opinion in that case was characterized by his successor, Chief Justice Taft, as a 'conspicuous instance of his unusual and remarkable power and facility in statesmanlike interpretation of statute law.'"

Cleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659 (8th Cir. 1962); Pennsylvania R. R. Co. v. Chromcraft Corp., 424 S.W.2d 104 (St. Louis Mo. App.1967), as supportive of its argument that this case need not be initially submitted to the Interstate Commerce Commission. We do not agree. The narrow legal issue involved here is whether the Commission has initial jurisdiction when the issue is reasonableness of a railroad rate.

In Pennsylvania R. R. Co. v. United States, *supra*, 363 U.S. at 203, 80 S.Ct. at 1132, the Supreme Court speaking through Mr. Justice Black said:

"Properly relying on our holding in United States v. Western Pacific R. Co., 352 U.S. 59, 62–70, 77 S.Ct. 161, 164–168, 1 L.Ed.2d 126, the Court of Claims suspended proceedings to enable the parties to have the Interstate Commerce Commission pass on the reasonableness of the rates."

In Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285 (1922), Mr. Justice Brandeis said at page 291, 42 S.Ct. 477, at page 479, 66 L.Ed. 943:

"Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission."

In its brief the carrier characterizes as one of the recognized leading decisions on the doctrine of primary jurisdiction McCleneghan v. Union Stock Yards Co. of Omaha, *supra*. Judge Blackmun's opinion in *McCleneghan* is indeed a typical, extremely thorough and

eruditical one and includes an extensive discussion of the doctrine of primary jurisdiction. It traces the doctrine from its inception in *Abilene, supra*, quoting at length from Far East Conference v. United States, 342 U.S. 570, 574–575, 72 S.Ct. 492, 96 L.Ed. 576 (1952). But the court there was not confronted with the issue of initial jurisdiction of the Commission where the reasonableness of a rate is involved, and there is nothing we can read in the opinion that would lend any comfort whatsoever to the carrier here. For example, Judge Blackmun also cites and quotes from Great Northern Ry. Co. v. Merchants Elevator Co., *supra*, and United States v. Western Pac. R. R. Co., *supra*, the extracts from some of these Supreme Court decisions being at least identical in part with some of the Supreme Court's language we have quoted.[6] We agree completely with every expression of Judge Blackmun in *McCleneghan*, including his statement that primary jurisdiction properly may be invoked in certain antitrust litigation involving the Packers and Stockyards Act. It is not, however, an inevitable barrier to court jurisdiction in all cases.

In Pennsylvania R. R. Co. v. Chromcraft Corp., *supra*, relied on by the carrier, the St. Louis Court of Appeals there said:

"The determination of whether a rate is or will be reasonable or otherwise in violation of the Act is initially a matter to be determined by the Interstate Commerce Commission, whose determination is subject to judicial review." 424 S.W.2d 104 at 106.

6. For example, in McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659, 665 (8th Cir. 1962), Judge Blackmun quoted from Mr. Justice Brandeis' opinion in Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922), as follows:
"'Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. * * * It is required because the

inquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable, and such acquaintance is commonly to be found only in a body of experts.'"

A wealth of material has been written on the subject of primary jurisdiction [7] and some of the famous Supreme Court cases have stated it so well that it would be presumptuous for us to attempt elaboration. The doctrine originated in a railroad rate case and has been fully developed and given application to agencies other than the Interstate Commerce Commission, such as the National Labor Relations Board, Civil Aeronautics Board, Federal Maritime Board, etc. The doctrine simply seeks an accommodation of the role of the courts and administrative agencies. Its application is desirable when the factual issues are not within the conventional experience of the courts and include such technical matters as those involving railroad freight rates. In fact, the doctrine is particularly essential in railroad rate cases in order to maintain uniformity of rulings when rates are involved. If there is any doubt about this being a case requiring initial resolution by the Commission, the mere scanning of the Commission's order is convincing. The Commission, in its order, dealt with the relation of the rate involved with the rates of other commodities, the susceptibility to transportation hazards, the protection of the integrity of carload rate structures, comparison with car-mile and ton-mile earnings with other shippers of furniture, relation to and effect on other shippers of furniture using a straight carload rate vis-a-vis shipment of batteries of four cars, the existence of 10,000-pound scales on inbound routes in certain cities, the existence of effective motor carrier competition, etc. Certainly these facts are technical and complicated. No case has been cited to us and our research has uncovered none where the court held that the Commission did not have initial jurisdiction if the issue concerned the reasonableness of the rate.

The delay is unfortunate but we have no alternative under the plain teachings of the Supreme Court other than to remand this case to the district court with instructions to retain jurisdiction and withhold final determination of this issue until the Commission reaches a final determination of the litigation there.

### Res Judicata.

In September of 1966 the carrier brought an action against the shippers for demurrage charges.[8] On April 28, 1967, the carrier amended its demurrage complaint and added as a party defendant Alsco, Inc., which had assumed the assets and liabilities of Chromcraft, Inc., one of the defendants in that action.

It is argued that since all of the shipments in the instant case were made prior to the amendment in the demurrage case, the doctrine of res judicata forecloses this suit inasmuch as the carrier had an opportunity when filing the amendment in the demurrage case to make the allegations concerning the unpaid freight charges pleaded herein. The argument runs that the demurrage action and the present action involve the same parties on the same accounts for basically the same period of time on some of the shipments, thus constituting a splitting of the carrier's causes of action. The demurrage case, however, did not involve any of the shipments included in the present freight charge case.

The shippers have ignored Fed.R.Civ. P. 15(c), which provides that an amendment relates back to the date of the original complaint:

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set

---

7. See e. g., Jaffee, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964); Guandolo, Transportation Law, Ch. 37, "Primary Administrative Jurisdiction," pp. 473–481 (1965); 3 Davis, Administrative Law Treatise, §§ 19.01–19.05 (1958).

8. See Furniture Forwarders of St. Louis, Inc. v. Chicago, R. I. & P. R. R. Co., 393 F.2d 537 (8th Cir. 1968).

forth in the original pleading, the amendment relates back to the date of the original pleading. * * *"

 The date of the filing of the demurrage case was in September of 1966, which was before 65 of the 67 shipments sued on here were made. When the carrier subsequently amended its demurrage complaint on April 28, 1967, it was under no obligation to include the allegations concerning the unpaid freight charges asserted here. These charges are clearly sufficient to constitute a separate cause of action.

The demurrage claim in each instance involved different shipments from those involved in the instant case, so it is quite obvious that for this and other reasons the evidence to prove one claim is not necessary to prove the other. See and compare Baggett Transportation Co. v. United States, 319 F.2d 864, 869, 162 Ct.Cl. 570 (1963).

 Additionally, the instant case is based upon separate bills of lading and each bill of lading constitutes the contract on which the carrier's action is based. Von Der Ahe Van Lines, Inc. v. United States, 358 F.2d 999, 1001, 175 Ct.Cl. 281 (1966), cert. denied, 385 U.S. 837, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966).[9] See also and compare United States v. Mississippi Valley Barge Line Co., 285 F.2d 381, 390 (8th Cir. 1960); United States v. Louisville & Nashville R. R. Co., 221 F.2d 698 (6th Cir. 1955). The shippers here made payment of some of the claims by single check but noted thereon which shipments and charges were being paid. This does not alter the legal consequences or make of this an open and running account. Our conclusion is that the district court properly held that defendant's plea under the facts related affords no defense under the doctrine of res judicata.

We affirm the district court's ruling on the res judicata issue, but for rea-sons stated in the first section of this opinion we feel compelled by the teachings of the Supreme Court to remand the case to the district court with instructions to vacate the judgment entered but to retain jurisdiction and stay its hand until final action of the Commission on the reasonableness of the rate issue.

It is so ordered.

---

9. In Von Der Ahe Van Lines, Inc. v. United States, 358 F.2d 999, 1001, 175 Ct.Cl. 281 (1966), cert. denied, 385 U.S. 837, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), the court said: "The bill of lading is the contract of carriage upon which the carrier's action is based. (Citing cases.)"