In re SHARM EXPRESS, INC., Debtor.

Edward W. BERGQUIST, Trustee in the Bankruptcy Estate of Sharm Express, Inc., Plaintiff,

v.

7/24 FREIGHT SALES, INC., Defendant.

Bankruptcy No. 4–87–3241–RJK.
Civ. No. 4–90–730.
Adv. No. 4–89–337.

United States District Court, D. Minnesota, Fourth Division.

Jan. 17, 1991.

Thomas E. Wolff, Snelling, Chistensen & Briant, Minneapolis, Minn., for plaintiff.

Richard L. Gill, Robert T. Kugler, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's appeal from the August 22, 1990 order of the bankruptcy court denying defendant's motion to amend its answer, granting plaintiff's motion to withdraw referral, and granting plaintiff's motion for summary judgment. The order will be reversed.

### FACTS

This appeal arises out of an adversary proceeding initiated by the trustee for the bankruptcy estate of Sharm Express, Inc. against defendant and appellant herein 7/24 Freight Sales, Inc. (7/24). Prior to its liquidation in bankruptcy, Sharm Express, Inc. (Sharm) was an interstate motor common carrier. Between October 1, 1984 and November 11, 1986 Sharm provided carriage services for 7/24. Plaintiff alleges that during this period Sharm and 7/24 negotiated rates on 119 shipments below the applicable tariff rate for transportation services.

In the present adversary proceeding, the trustee for Sharm, Edward W. Bergquist, seeks $31,966.43 in freight undercharges, comprising the difference between the negotiated rates paid by defendant and the applicable tariff. Defendant filed an initial answer claiming, inter alia, that plaintiff's attempt to collect undercharges constituted an "unreasonable practice" based on the prior negotiated agreement for lower rates.

Based on the July 7, 1989 decision of the United States Court of Appeals for the Eighth Circuit in *Maislin Industries v. Primary Steel, Inc.*, 879 F.2d 400 (8th Cir. 1989), *rev'd,* —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the bankruptcy court on September 14, 1989 stayed the bankruptcy proceeding and referred the unreasonable practice issue to the Interstate Commerce Commission (ICC). In *Maislin,* the Eighth Circuit held that the ICC had jurisdiction to decide whether a carrier had engaged in an unreasonable practice by agreeing to a lower rate and then seeking to recover the higher filed rate. On June 21, 1990, however, the United States Supreme Court reversed, holding that the Interstate Commerce Act precludes a shipper from relying upon a shipper's ignorance of a filed rate, or a carrier's agreement to charge less than the filed rate, as a defense to collection of the filed rate by the carrier. *Maislin,* 110 S.Ct. at 2764–65. The Court in *Maislin* noted that defendant had claimed in its answer not only that the attempt to collect tariff rates after negotiating lower rates constituted an unreasonable practice, but also that the tariff rates themselves were unreasonable within the meaning of the Act, and noting that the ICC did not determine this question, the Court indicated in a footnote that "the issue of the reasonableness of the tariff rates is open for exploration on remand." *Id.* at 2767 n. 10. On remand, the district court referred the reasonableness issue to the ICC. *Maislin Industries, N.A., Inc. v. Primary Steel, Inc.,* 85–0021–CV–W–JWO–5 (W.D.Mo. Nov. 21, 1990).

After the Supreme Court's decision in *Maislin* was rendered, defendant, on July 26, 1990, petitioned the ICC to raise the issue of the unreasonableness of Sharm's tariff rate. On August 6, 1990, defendant moved the bankruptcy court to amend its answer to raise the rate reasonableness defense. On the same date, plaintiff moved to withdraw the bankruptcy court's referral to the ICC and for summary judgment based on the United States Supreme Court's decision in *Maislin.*

On August 22, 1990, defendant's motion to amend and plaintiff's motions to withdraw referral and for summary judgment were heard by the bankruptcy court. The bankruptcy court, after dispensing with oral argument, ruled from the bench denying defendant's motion to amend and granting plaintiff's motion to withdraw referral and for summary judgment. While the written orders cite no grounds for the decisions, the transcript of the hearing indicates that the bankruptcy court based its rulings on *Maislin* as well as the plaintiff's delay in raising this defense. Defendant now appeals from these rulings.

DISCUSSION

I. *Whether the Bankruptcy Court Erred in Ruling that the Maislin Decision Precludes Defendant from Claiming Unreasonableness of Plaintiff's Tariffs as a Defense to Plaintiff's Collection Action*

The Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.,* provides that a "common carrier . . . may not subject a person, place, port, or type of traffic to unreasonable discrimination." 49 U.S.C. § 10741(b). The Act further provides that "a rate . . . classification, rule, or practice related to transportation or service . . . must be reasonable." *Id.* § 10701(a). Responsibility for determining whether a rate or practice is reasonable is vested in the ICC. Under the Act, the ICC is to authorize rates which are "adequate under honest, economical and efficient management to cover total operating expenses . . . plus a reasonable profit." *Id.* § 10701(e).

The Act specifically prohibits a carrier from providing services at any rate other than the filed, or tariff, rate:

Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the [ICC] . . . shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of

that transportation or service, or another device. *Id.* § 10761(a). A carrier or shipper who violates the filed rate requirement is subject to civil or criminal sanctions. Sections 11902 to 11904.

The requirement of the Act that shippers and carriers not deviate from the rates filed with the ICC has in the past been strictly enforced. The Supreme Court has held, for example, that a shipper's ignorance or a carrier's misquotation of the applicable rate may not serve as a defense to the collection of the filed rate. *See Southern Pacific Transportation Co. v. Commercial Metals Co.,* 456 U.S. 336, 352, 102 S.Ct. 1815, 1825, 72 L.Ed.2d 114 (1982); *Louisville & Nashville Railroad Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915). *See generally, Maislin,* 110 S.Ct. at 2762–63.

In 1986, however, the ICC announced a policy whereby the ICC, in rate collection cases referred to it by courts, would decide whether carriers who have negotiated rates with shippers different from those filed with the ICC and then seek to collect the difference from the shippers under the filed rate doctrine in so doing engage in an unreasonable practice in violation of the Act. The ICC relied, in part, upon the passage of the Motor Carrier Act of 1980 which significantly deregulated the motor carrier industry. The ICC reasoned that the new competitive atmosphere made strict application of the filed rate doctrine unnecessary. *See generally, Maislin,* 110 S.Ct. at 2763. The ICC announced that the following would be considered an unreasonable practice:

(1) negotiating a rate; (2) agreeing to a rate that the shipper reasonably relies upon as being lawfully filed; (3) failing, either willfully or otherwise, to publish the rates; (4) billing and accepting payment at the negotiated rate for (sometimes) numerous shipments; and (5) then demanding additional payment at higher rates.

NITL Petition to Institute Rule Making on Negotiated Motor Common Carrier Rates, 5 ICC 2d 623, 628 n. 11 (1989), *quoted in Maislin,* 110 S.Ct. at 2764.

*Maislin* involved an attempt by a shipper, who was subject to a collection action by a carrier, to rely upon the ICC's new unreasonable practice policy as a defense to the collection action. As in the case presently before the Court, the shipper and carrier privately negotiated rates lower than rates on file with the ICC. When the shipper's parent company filed bankruptcy, an audit revealed the differential billing, whereupon the bankrupt estate sued for the undercharges. The shipper defended on the grounds that where the parties had negotiated lower rates, rebilling at the tariff rates constituted an unreasonable practice in violation of the Interstate Commerce Act. In the alternative, the shipper argued that the filed rates themselves were unreasonable within the meaning of the Act. Finding these matters to be within the primary jurisdiction of the ICC, the district court stayed the collection action and referred the case to the ICC. The ICC applied its new policy and upheld the shipper's argument that the attempt to collect the filed rate was an unreasonable practice. The ICC did not then reach the reasonableness issue. The district court then granted summary judgment for the shipper, and the Eighth Circuit affirmed.

The Supreme Court reversed. The Court began its analysis by discussing the long line of cases comprising the "filed rate doctrine," beginning with *Keogh v. Chicago & Northwestern Railroad Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922), wherein the Court stated the doctrine as follows:

The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.... This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated.

The Court stressed the strictness of the doctrine, citing the result in *Louisville & Nashville Railroad Co. v. Maxwell,* 237

U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915), wherein the Court held that a passenger who purchased a train ticket at a rate misquoted by the ticket agent had no defense against the subsequent collection of the tariff rate. As the Court stated in *Louisville & Nashville Railroad Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924):

> No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor.

According to the Court, the strictness of the doctrine was intended to deter carriers from intentionally misquoting rates to shippers as a means of offering rebates or discounts to favored shippers. *Maislin*, 110 S.Ct. at 2766.

In rejecting the ICC's negotiated rates policy, the Court held that the 1980 amendments to the Act did not legislatively overrule the filed rate doctrine.

In a footnote, which is essential to the issue presently before the Court, the Supreme Court noted that the ICC never decided the second issue raised in the shipper's answer in *Maislin*, *i.e.*, whether the rates on file with the ICC were in fact "reasonable" within the meaning of the Interstate Commerce Act. Stressing that the filed rate doctrine is subject to the requirement that rates on file not be unreasonable, the Court expressly noted that the issue of unreasonableness remained to be decided on remand:

> The ICC did not determine whether the tariff rates were unreasonable even though respondent requested such a determination. We therefore must assume, for purposes of our decision today, that the rates were reasonable. *The issue of the reasonableness of the tariff rates is open for exploration on remand.*

*Maislin*, 110 S.Ct. at 2767 n. 10 (emphasis added). The opinion concludes with an instruction that the cause be "remanded for further proceedings consistent with this opinion." *Id.* at 2771.

After the issuance of the *Maislin* opinion, the defendant in the case presently before the Court, in reliance upon footnote 10, petitioned the ICC to brief the reasonableness issue, and moved the bankruptcy court to amend its answer accordingly. Defendant argues that footnote 10 clearly indicated the Supreme Court's recognition of the propriety of raising rate reasonableness as a defense to a collection action. Plaintiff, however, argues that unreasonableness is not a defense to a collection action but must be raised in a separate action pursuant to 49 U.S.C. § 11705(b)(3) which provides: [1]

> A common carrier providing transportation or service subject to the jurisdiction of the Commission ... is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle.

The statute also contains other procedural provisions. Limitations periods are set forth in section 11706.

Plaintiff argues that the legislative history behind the Act indicates that the terms of the Act are to be strictly construed, and do not provide for a shipper to claim unreasonableness as a defense, but rather requires a shipper to bring a separate civil action for damages caused by overcharging. Plaintiff notes that in *T.I.M.E. v. United States*, 359 U.S. 464, 469, 79 S.Ct. 904, 907, 3 L.Ed.2d 952 (1959), the United States Supreme Court held that an earlier version of the statute did not permit the ICC to administratively determine whether rates charged by the carrier in the past were unreasonable. In the wake of this decision, according to the plaintiff, Congress amended the Act to expressly provide for the present procedure whereby a shipper who alleges overcharging may bring a civil action for damages. Plaintiff

---

**1.** Defendant cites an earlier version of the statute which provided for the recovery of "reparations." The statute was amended in 1978 to substitute the word "damages" for the term "reparations."

argues that Congress' response to the *T.I. M.E.* decision was limited, and that the procedures set forth in the amendments should be strictly construed.

Defendant cites a number of cases which have recognized the propriety of remanding a reasonableness defense to the ICC. Most recently, in *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101 (1st Cir.1990), a bankrupt motor carrier sought to collect from a shipper the difference between rates paid and filed. The shipper asserted that (1) the collection practice was unreasonable, and (2) that the rates themselves were unreasonable. After the district court denied referral to the ICC, the United States Court of Appeals for the First Circuit, prior to the Supreme Court's decision in *Maislin*, ruled that both the reasonableness of the filed rates and the collection practices were within the primary jurisdiction of the ICC. The order was amended, however, following the issuance of the *Maislin* decision, by vacating the district court's decision only as to the unreasonable practices claim. With regard to the reasonableness of the rates, the First Circuit followed the example of the United States Supreme Court in *United States v. Western Pacific Railway Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). *Western Pacific* involved a claim against the United States as shipper for under-payments. The United States defended arguing that proper construction of the tariff required imposition of a lower rate, and, in the alternative, that the higher rate was unreasonable. The Supreme Court held that the primary jurisdiction doctrine required that both of the questions be remanded to the ICC for determination.

In *Delta Traffic*, the First Circuit noted that the Act provides for a carrier to seek reparations on the grounds that a filed rate was unreasonable within the meaning of the Act, and noted that because such an argument could be made in a reparations suit, "courts ordinarily have permitted shippers to assert this same ground as a *defense* in a *carrier suit* to collect the filed (legal) rate." *Delta Traffic*, 902 F.2d at 104 (emphasis in original). After citing a long list of cases approving this procedure, including two Supreme Court cases, *United States v. Chesapeake & Ohio Railway Co.*, 352 U.S. 77, 80, 77 S.Ct. 172, 173, 1 L.Ed.2d 140 (1956), and *Pennsylvania Railroad Co. v. United States*, 363 U.S. 202, 203, 80 S.Ct. 1131, 1132, 4 L.Ed.2d 1165 (1960) (dicta), the court defended the rationale for this approach as tending to (1) prevent carriers from favoring particular shippers by charging a lower than filed tariff rate, (2) protect shippers from having to pay a higher-than-reasonable rate, and (3) permit the relevant expert body, the ICC, to make the relevant expert determinations. *Id.* at 105. *See also Orr v. ICC*, 912 F.2d 119, 122 (6th Cir.1990) (following *Maislin*, remanding reasonableness defense to district court).

The court in *Delta Traffic* noted a contrary opinion by the United States Court of Appeals for the Fifth Circuit in *Supreme Beef Processors, Inc. v. Yaquinto*, 864 F.2d 388 (5th Cir.1989). Plaintiff herein relies upon *Yaquinto* in opposition to defendant's motion for reference of this case to the ICC. The court in *Delta Traffic* noted that the refusal of the Fifth Circuit to recognize the defense of unreasonableness was in conflict with numerous authorities. According to the court in *Delta Traffic*, the Fifth Circuit in precluding the defense wrongfully relied upon a number of Supreme Court cases declaring unlawful attempts by federal courts to enjoin the future application of rates filed by carriers with the ICC. This line of cases, according to the *Delta Traffic* court, was based upon concern that such injunctions undermined the agency's primary jurisdiction and threatened to introduce nonuniformity in rate making. The court held that the reasoning underlying these cases does not apply where unreasonableness is raised as a defense to a collection action. The court also noted that in view of the statutory amendments making carriers liable for damages resulting from unreasonable rates, the Supreme Court's decision in *T.I. M.E.*, *supra*, does not bar the assertion of unreasonableness of past charges as a defense in a carrier's suit for undercharges. *Accord Chicago, Rock Island & Pacific Railroad Co. v. Furniture Forwarders, Inc.*, 420 F.2d 385 (8th Cir.1970) (staying

district court collection action pending ICC determination of shipper's petition to consider reasonableness of rates).[2]

■ The Court finds that the bankruptcy court wrongfully concluded that *Maislin* precludes reference of this action to the ICC to determine defendant's reasonableness defense. The Interstate Commerce Act clearly provides a shipper with the right to argue that a particular filed rate is unreasonable. Plaintiff does not explain how narrow construction of this right is necessary to effectuate the purposes of the filed rate doctrine or the Interstate Commerce Act generally. If a shipper has the right to argue to the ICC that a particular rate is unreasonable, the Court fails to see why it should not be able to do so in a defense to a collection action as well as in an independent proceeding. According to the logic propounded by the plaintiff in this case, the Court would be required to enter judgment for the plaintiff in this case pursuant to the filed rate, and assist the plaintiff in enforcing that judgment if necessary. Only when a judgment is collected would defendant then be able to initiate a separate proceeding before the ICC for reparation of the overcharging. The Court sees no reason to impose upon the parties and the judicial system the inefficiency and potential duplication attending such a procedure. The Court agrees with the First Circuit that allowing unreasonableness to be raised as a defense to a collection action does not undermine the purposes underlying the Interstate Commerce Act nor in any way involve courts in rate making properly assigned to the ICC. Indeed, it appears that the clearly expressed purpose of the Act to protect shippers from unreasonable charges would be undermined were the Court to preclude a shipper from raising unreasonableness as a defense to a collection action. The Court concludes that defendant should be allowed to present this argument to the ICC.

## II. Whether Defendant has Presented Sufficient Evidence of Unreasonableness to Warrant Referral

Plaintiff argues that the evidence submitted by defendant in support of its motion to amend and to refer to the ICC is insufficient as a matter of law to support a finding of unreasonableness and therefore that referral should be denied. Plaintiff relies upon a recent opinion of the United States Court of Appeals for the Third Circuit, *Branch Motor Express Co. v. Caloric Corp.*, 914 F.2d 241 (3d Cir.1990), involving a suit to collect undercharges which raised both the collection action and unreasonableness of the rate itself as defenses. The district court referred both issues to the ICC, which accepted the unreasonable practice defense but was silent on the unreasonable rate claim. On appeal, the Third Circuit, citing *Maislin*, overturned the unreasonable practice defense. As to the unreasonable rate claim, the court cited 49 U.S.C. § 10701(e), which requires the motor carrier's costs to be considered in evaluating the economic validity of a challenged rate. The court found that the shipper, while nominally pursuing a rate unreasonableness defense, supported that defense with no evidence whatsoever other than the disparity between the negotiated and filed rate. Based on this inadequacy of proof, the court held that the referral of the rate reasonableness issue to the ICC would be inappropriate. The court also interpreted footnote 10 of the *Maislin* decision as not expressly approving remand of the rate reasonableness issue to the ICC, but merely indicating that the issue would be "open for exploration" by the Eighth Circuit.

■ Here, plaintiff faults the defendant for relying solely on the disparity between plaintiff's rates and rates charged by other carriers to prove unreasonableness. According to plaintiff, defendant must introduce evidence concerning the carrier's costs and revenue in order to support an

**2.** This Court's decision in *In re Total Transportation, Inc.*, 84 B.R. 590 (D.Minn.1988) does not appear to be on point. The issue in *In re Total Transportation, Inc.* was whether a shipper had the right to refer to the ICC the issue of whether a carrier's action to collect a filed rate despite

negotiation of a lower rate was an unreasonable practice. Anticipating the Supreme Court's ruling in *Maislin,* the Court affirmed a bankruptcy court's decision to deny referral. The issue of the reasonableness of the rates themselves, however, was not before the Court.

unreasonableness defense. The plaintiff also notes that there is a "zone of reasonableness" within which carriers can operate. 49 U.S.C. § 10708.

In response, defendant argues that the $1.35 per mile rate charged by the plaintiff is approximately fifty percent higher for the same services than rates offered by numerous other ICC carriers, and that this disparity yields a permissible inference that since those carriers were presumably earning a reasonable profit on lower rates, that plaintiff's rates were unreasonably high. Defendant argues that it should be entitled to further develop its proof on the issue of reasonableness through discovery, and that it would be unfair to recognize the validity of its claim yet preclude it from asserting it without offering it an opportunity to develop proof.

As indicated above, the Court finds that defendant should be allowed to petition the ICC to reopen briefing on the issue of rate reasonableness. Defendant stresses that it was not unreasonable for it not to present the rate reasonableness issue prior to the Court's decision in *Maislin* since the rate reasonableness defense requires different and more technical evidence than the unreasonable practices defense. Defendant argues that it would have been time-consuming, costly and superfluous to have pursued the unreasonableness defense when the unreasonable practices claim, as outlined by the ICC and endorsed by the Eighth Circuit, was easily met. According to defendant, it was only after the *Maislin* decision that it became necessary to pursue the rate reasonableness defense.

The Court finds that defendant has introduced sufficient evidence to justify referring the matter to the ICC. Whether defendant will be able to sustain its burden of proof on this issue remains to be seen. However, the technical question of whether plaintiff has introduced sufficient evidence of unreasonableness is a matter left to the expertise of the ICC, at least in the first instance, and the Court will not preclude defendant from raising the defense before the ICC based on the state of its proof at this point.

III. *Whether Defendant Unreasonably Delayed in Asserting the Rate Reasonableness Defense*

As noted, defendant did not raise the rate reasonableness issue until after the *Maislin* decision because of the technical nature of the evidence necessary to prove it before the ICC. It was only following the *Maislin* decision that reliance on the rate reasonableness issue became necessary. It is undisputed that within two weeks of the *Maislin* decision, plaintiff moved the ICC to reopen the proceedings to conduct discovery and submit evidence regarding the rate reasonableness defense, and shortly thereafter petitioned the bankruptcy court to amend its answer accordingly. The procedural posture of this case is unusual in view of the timing of the *Maislin* decision. The Court agrees with defendant that it was not unreasonable to forego the reasonableness defense in view of the state of the law prior to the *Maislin* decision. Further, the Court sees no prejudice to the plaintiff in now having to defend the reasonableness of its filed rate before the ICC. Accordingly, the Court finds that the bankruptcy court erred in granting summary judgment for plaintiff and denying defendant's motion to amend to raise the rate reasonableness defense.

CONCLUSION

Based on the foregoing, and upon all the files, records and proceedings,

IT IS ORDERED that:

1. the bankruptcy court's order dated August 22, 1990 granting summary judgment for plaintiff and withdrawing referral to the ICC is reversed;

2. the bankruptcy court is instructed to permit defendant to amend its answer to raise the reasonableness of plaintiff's rates as a defense to the collection action.