949 F.2d 107
 60 USLW 2338
 In re CAROLINA MOTOR EXPRESS, INC., Fed. I.D. No.
56-1299892, Debtor.
Langdon M. COOPER, trustee, Mark & Associates of North
Carolina, Inc., Plaintiffs-Appellants,
v.
DELAWARE VALLEY SHIPPERS, Defendant-Appellee.
Langdon M. COOPER, Trustee for Carolina Motor Express, Inc.,
Mark & Associates of North Carolina, Inc.,
Plaintiffs-Appellants,
v.
Peter C. REITER, Defendant-Appellee.
Langdon M. COOPER, Trustee for Carolina Motor Express, Inc.,
Mark & Associates of North Carolina, Inc.,
Plaintiffs-Appellants,
v.
CALIFORNIA CONSOLIDATED ENTERPRISES, INC., Defendant-Appellee.
 Nos. 89-3259, 89-3261 and 89-3262.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 7, 1989.
Decided Nov. 7, 1991.
As Amended Nov. 22, 1991.
 
 Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., argued (Robert B. Walker, John T. Siegler, Washington, D.C., Langdon M. Cooper, Mullen, Holland, Cooper, Morrow, Wilder & Sumner, P.A., Gastonia, N.C., on brief), for plaintiffs-appellants.
 Robert L. Cope, Grove, Jaskiewiz, Gilliam & Cobert, Washington, D.C., argued (Stuart R. Childs, Washington, D.C., Robert J. Gallagher, Northampton, Mass., on brief), for defendants-appellees.
 Before WIDENER and HALL, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 In this consolidated appeal, we address issues arising from the requirement of the Interstate Commerce Act (Act), 49 U.S.C. § 10101 et seq. (1982) that motor common carriers file their rates with the Interstate Commerce Commission (ICC) and that both shippers and carriers adhere to these rates. These cases involve a motor carrier that seeks to collect, based upon its tariff on file with the ICC, undercharges from a shipper with whom it privately negotiated a rate lower than that which the tariff required.
 
 
 2
 The bankruptcy court entered a final judgment for the plaintiffs in two of the three cases, concluding that because the filed rate doctrine precluded defendants' assertion of equitable defenses to the carrier's undercharge claims, the carrier was entitled to recover regardless of its own actions. Cooper v. California Consolidated Enterprises, 84 B.R. 979 (Bankr.W.D.N.C.1988). On appeal, the district court reversed the final judgments of the bankruptcy court and referred to the ICC the question of whether the carrier's collection of the undercharges would amount to an unreasonable practice. Although the ICC has yet to issue a decision in the two cases, plaintiffs now appeal.[1]
 
 
 3
 On recommendation of the bankruptcy court, the district court withdrew reference to the bankruptcy court of the third case and, on the defendant's motion, referred the case to the ICC. The ICC later issued a decision in the case stating that the carrier's collection of undercharges constituted an unreasonable practice. Based upon the ICC's finding, the district court granted summary judgment for defendant and dismissed plaintiffs' action. Plaintiffs appeal.[2]
 
 
 4
 We vacate the district court's reversal of the bankruptcy court's judgment in the first two cases, and vacate the district court's entry of summary judgment for defendant in the third case. For the reasons discussed below, we remand these cases to the district court with instructions that the judgment of the bankruptcy court be reinstated in 89-3261 and 89-3262, that the plaintiffs' cross-appeal from the judgment of the bankruptcy court concerning late payment charges and attorneys' fees be ruled upon in 89-3261 and 89-3262, and that judgment be entered in favor of the plaintiffs in 89-3259.
 
 I.
 
 5
 Because the material facts in all three cases are undisputed and are for all practical purposes identical, we need not set forth a detailed chronology of the relationship between the parties. The Fifth Circuit aptly described the present scenario as follows:
 
 
 6
 The well-worn choreography for these cases involves a motor carrier's action against a shipper to collect for undercharges; that is, to collect the difference between the higher rate which the carrier has filed with the Interstate Commerce Commission ... and the rate which the parties had negotiated.
 
 
 7
 Supreme Beef Processors, Inc. v. Yaquinto, 864 F.2d 388, 388-89 (5th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). As was the case in Supreme Beef, the motor carrier in this case, Carolina Motor Express (CMX), supplied transportation services to the shippers at privately negotiated rates. The shippers believed that CMX would publish the quoted rates in its tariff on file with the ICC. CMX, however, did not publish the quoted rates as a tariff and later billed the shippers at the negotiated rate, which the shippers paid in full. After CMX became bankrupt, an independent auditor employed by the bankruptcy trustee discovered the discrepancy between the collected rates and the applicable tariff rates. The trustee and auditor then filed suit to recover the difference on behalf of CMX as debtor.
 
 II.
 
 8
 Under 49 U.S.C. § 10761(a), a motor carrier subject to the Interstate Commerce Act "may not charge or receive a different compensation for ... transportation or service than the rate specified in the tariff" filed with the ICC. In addition, the Act states that "[a] rate ..., classification, rule, or practice related to transportation or service provided by a carrier ... must be reasonable." 49 U.S.C. § 10701(a). In the classic case of Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915), the Court explained the significance of section 10761(a)'s predecessor which is the same for the present statute:
 
 
 9
 Under the interstate commerce act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed.
 
 
 10
 The Court recently reemphasized the importance of this filed rate doctrine as "essential to preventing price discrimination and stabilizing rates." Maislin Industries, U.S., Inc. v. Primary Steel, --- U.S. ----, ----, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).
 
 
 11
 The defendants, prior to our order holding this appeal in abeyance pending the Supreme Court's Maislin decision, contended that the carrier's attempt to collect the undercharges was an unreasonable practice under the Act and that the plaintiffs were therefore not entitled to collect the filed rate. Maislin rejected just this contention as do we. As the Supreme Court observed, allowing such an equitable defense would be "flatly inconsistent" with the statute because the defense "rests on an interpretation of the Act that is contrary to the language and structure of the statute as a whole and the requirements that make up the filed rate doctrine in particular." Maislin, --- U.S. at ---- - ----, 110 S.Ct. at 2768. We accordingly vacate the district court's reversal of the bankruptcy court's judgment in 89-3261 and 89-3262, and vacate the district court's entry of summary judgment for defendant in 89-3259.
 
 
 12
 The defendants next argue that, Maislin notwithstanding, this court should remand these cases back to the district court with instructions to refer them to the ICC for a determination of the reasonableness of the carrier's filed tariff rates. In fact, the defendants argue that certain passages in the Maislin opinion require such an course. Before we consider this argument, however, we must first address the plaintiffs' assertion that the defendants have waived any claim they may have had by failing to raise the issue of rate reasonableness in prior proceedings. After a review of the record in these cases, we find that the defendants have preserved the argument.
 
 
 13
 Having determined that the defendants may contest the reasonableness of the carrier's filed rates, the question remains of whether the cases should be remanded for re-referral to the ICC. This question is one that the Supreme Court has not decided and on which there is no precedent in this circuit. Maislin, to be sure, did mention in a footnote that the issue of rate reasonableness was not presented in the case and would be "open for exploration" on remand. --- U.S. at ---- n. 10, 110 S.Ct. at 2767 n. 10. But while the Supreme Court has noted without disapproval a stay of proceedings and referral to the ICC after reasonableness was raised as a defense, see Maislin, --- U.S. at ---- - ----, 110 S.Ct. at 2764-66; United States v. Western Pac. R.R. Co., 352 U.S. 59, 71, 77 S.Ct. 161, 168-69, 1 L.Ed.2d 126 (1956), it has also reiterated in Maislin that "[u]nder [the Act] the shipper was bound to pay the legal rate; but if he could show that it was unreasonable he might recover reparation." --- U.S. at ----, 110 S.Ct. at 2767 (quoting Arizona Grocery Co. v. Atchison, Topeka & Sante Fe R.R. Co., 284 U.S. 370, 384-85, 52 S.Ct. 183, 184-85, 76 L.Ed. 348 (1932)); see also Pennsylvania R.R. Co. v. International Coal Mining, 230 U.S. 184, 197, 33 S.Ct. 893, 896, 57 L.Ed. 1446 (1913) ("If ... the rates were unreasonable, the shipper was nevertheless bound to pay and the carrier to retain what had been paid, leaving, however, to the former, the right to apply to the Commission for reparation."). We believe that the Court's decisions are correctly read as taking no position on whether re-referral to the ICC is required in such cases.
 
 
 14
 We are of opinion that a defense attacking the reasonableness of a carrier's filed rates should not operate to stay enforcement of the filed rate doctrine. Rather, shippers must pay the filed rates and contest those filed rates before the ICC independently if they wish to seek reparations from the carrier. We believe that such an approach is preferable to an alternative procedure under which the courts would automatically refer cases to the ICC whenever a rate was challenged. This alternative approach would provide a strong incentive for shippers routinely to contest the validity of the carrier's rates in order to delay paying the carrier's filed rate. Such a situation would be wholly inconsistent with the filed rate doctrine. Shippers are charged with knowledge of the filed rate, Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. at 97, 35 S.Ct. at 495; Kansas City Southern R.R. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913), and can contest its reasonableness directly before the ICC at any time, see 49 U.S.C. § 10708(a)(1); Regular Common Carrier Conference v. United States, 793 F.2d 376, 379 (D.C.Cir.1986). Moreover, carriers are entitled to receive the filed rate for their services immediately when due. Arizona Grocery v. Atchison, Topeka & Sante Fe R.R. Co., 284 U.S. at 384, 52 S.Ct. at 184; Southern Pac. Transp. Co. v. San Antonio, Texas, 748 F.2d 266, 274 (5th Cir.1984). Given these basic precepts, we believe that it would be anomalous to allow the defendants a further delay in paying the rates, of which they have been charged with knowledge from the beginning, but which they did not contest until they were sued by the trustee.
 
 
 15
 In adopting this position, we join the Fifth Circuit, which has determined that "[a] shipper that pleads unreasonableness as a defense cannot prevent enforcement of the filed tariff doctrine or force the district court to stay proceedings and refer the case to the Commission." Supreme Beef Processors, Inc. v. Yaquinto, 864 F.2d at 392; see also Southern Pacific Transp. Co. v. San Antonio, Texas, 748 F.2d at 274. We note that such a rule in no way forecloses the shipper from raising the issue of the reasonableness of the tariff rates. This issue could be raised either before or after the filing of the undercharge suit and could result in a reparations payment to the shipper by the carrier. See 49 U.S.C. § 10708(a)(1); Regular Common Carrier Conference, 793 F.2d at 379. In the meantime, however, the tariff rate as filed will have been enforced. While we recognize that judicial opinion on this point is not unanimous, Delta Traffic Serv., Inc. v. Transtop, Inc., 902 F.2d 101 (1st Cir.1990); see also Western Transp. Co. v. Wilson & Co., 682 F.2d 1227 (7th Cir.1982), we believe that the rule we adopt today best accords with the Supreme Court's longstanding insistence that "strict adherence to the filed rate ..., despite its harsh consequences in some cases, is necessary to enforcement of the Act." Maislin, --- U.S. at ----, 110 S.Ct. at 2769; see Southern Pac. Transp. Co. v. Commercial Metals, 456 U.S. 336, 343-44, 102 S.Ct. 1815, 1820-21, 72 L.Ed.2d 114 (1982); Midstate Horticultural Co. v. Pennsylvania R.R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 130-31, 88 L.Ed. 96 (1943). And we add that we consider it of considerable importance that the filed rate doctrine has resulted in the prevention of the secret and discriminatory negotiated freight rates which were the plague of common carriers in times past.
 
 
 16
 On remand, the district court is instructed to reinstate the judgment of the bankruptcy court in 89-3261 and 89-3262, and to enter judgment for the plaintiffs in 89-3259. In addition, the district court in 89-3261 and 89-3262 should rule upon the plaintiffs' claim that the bankruptcy court erred in denying the late payment charges and attorneys' fees provided for in ICC CAXN 101 Item 435 of the carrier's tariff.[3]
 
 
 17
 Accordingly, the judgments of the district court reversing the bankruptcy court in 89-3261 and 89-3262 are
 
 
 18
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 19
 The district court's entry of summary judgment in 89-3259 is also
 
 VACATED AND REMANDED WITH INSTRUCTIONS.[4]
 
 20
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 21
 I agree with the majority's application of Maislin to the cases before us to the extent that the shippers' defense of "unreasonable practice" is disallowed as violative of the filed-rate doctrine. I disagree, however, with the majority's holding that a shipper may not raise "unreasonable rate" as a defense in an undercharge action. Furthermore, I believe that the equitable defense of unreasonable rate implicates a matter within the primary jurisdiction of ICC, and, therefore, referral to that agency and a stay of the court proceedings is the proper course of action.
 
 
 22
 Maislin involved a fact pattern similar to the instant cases. A carrier filed for bankruptcy, an audit revealed that several shippers had paid negotiated rates rather than the filed rate, an undercharge action was instituted, and the defendant shippers raised both unreasonable-rate and unreasonable-practice defenses. The primary thrust of the Supreme Court's decision is to invalidate ICC's 1986 Negotiated Rates policy and thereby affirm the continued validity of the filed-rate doctrine. The Court noted, however, that the "filed rate is not enforceable if ICC finds the rate to be unreasonable." Id., 110 S.Ct. at 2767. Although both the reasonableness of the rates and the practice of charging a negotiated rate were referred to ICC by the district court in Maislin, only the unreasonable practice issue was addressed by the agency. Maislin Industries, U.S. v. Primary Steel, 705 F.Supp. 1401, 1402-03 (W.D.Mo.1988). The Supreme Court noted, without elaboration, that "[t]he issue of the reasonableness of the tariff rates is open for exploration on remand." Maislin, 110 S.Ct. at 2767 n. 10. This somewhat cryptic footnote "has created uncertainty as to whether, in a carrier's suit to collect undercharges, a shipper may assert as a defense that the applicable tariff rate is unreasonable and obtain a stay of the suit and a reference to ICC for a determination of whether the rate is unreasonable." Duffy v. BMC Industries, Inc., 938 F.2d 353, 355 (2nd Cir.1991). This uncertainty leads the majority to a decision that I believe is at odds with precedent and sound practice.[1]
 
 
 23
 The majority finds, and I agree, that the three appellant-shippers have preserved the issue of rate reasonableness. The question remaining after Maislin is whether the shippers should be allowed to dispute the reasonableness of the rates in the context of the undercharge action, or whether their sole recourse should be an independent reparations[2] action under 49 U.S.C. § 11705(b)(3). For a variety of reasons, I believe the former path is correct.
 
 
 24
 I believe the sounder position is set forth in Delta Traffic Service v. Transtop, Inc., 902 F.2d 101, 104-07 (1st Cir.1990). In addition to demolishing the legal basis for the non-referral rule adopted by the Fifth Circuit in Supreme Beef Processors, the First Circuit explains the historical basis for the referral and stay rule which it believed was "universally accepted" until Supreme Beef Processors was discovered. Id. at 105. To the First Circuit's analysis I can only add the names of other post-Maislin decisions that have followed the referral and stay rule. Duffy v. BMC Industries, 938 F.2d 353 (2nd Cir.1991); Horn's Motor Express v. Harrisburg Paper Co., 765 F.Supp. 211 (M.D.Pa.1991); Overland Express v. International Multifoods, 765 F.Supp. 1386 (S.D.Ind.1990); Oneida Motor Freight v. Ormond Shops, 126 B.R. 431 (D.N.J.1991); In re Sharm Express, Inc., 122 B.R. 999 (D.Minn.1991).
 
 
 25
 One of the majority's arguments against referral and stay is that such a procedure "would provide a strong incentive for shippers routinely to contest the validity of the carrier's rates in order to delay paying the carrier's filed rate." Op. at 110. This argument ignores the disincentives against the filing of frivolous pleadings, e.g., Fed.R.Civ.P. 11, as well as other provisions to discourage delaying tactics. See, e.g., 49 U.S.C. § 11705(d)(3) (allowing an award of attorney's fees to a prevailing party in an action to enforce an ICC order for damages). Moreover, a complaining shipper should be required to present a threshold level of evidence of unreasonableness before referral is warranted; "a bold, conclusory allegation of rate unreasonableness" is insufficient. Oneida Motor Freight, 126 B.R. at 442; see also In re Sharm Express, 122 B.R. at 1004-05 (fifty percent disparity between rates of the carrier claiming undercharges and other ICC carriers sufficient to warrant referral); Covey v. Conagra, 763 F.Supp. 479, 482 (D.Colo.1991) (party requesting reference must "make a threshold showing of unreasonableness...."). This threshold determination would act as a further check against the referral of non-meritorious claims of rate unreasonableness.
 
 
 26
 These undercharge cases often arise in bankruptcy proceedings. Allowing the bankruptcy to proceed unabated, despite a claim of rate unreasonableness, may well leave the complaining shipper without a remedy. An independent reparations action might conclude after the termination of the bankruptcy proceedings, leaving a shipper with an ICC determination of unreasonableness that is unenforceable because the assets of the debtor's estate had been distributed earlier.[3]
 
 
 27
 I would reverse in 89-3259 and affirm the district court's order in 89-3261 and 893262 to the extent the bankruptcy court's orders in these cases were reversed, and I would remand with instructions to refer the rate unreasonableness issue to ICC and to stay other proceedings pending ICC's determination. I would, however, condition the referral upon a showing by each shipper that its rate claim was more than a "bold, conclusory allegation of rate unreasonableness." Oneida Motor Freight, 126 B.R. at 442.
 
 
 
 [1]
 In their brief, defendants Reiter and California Consolidated Enterprises question the propriety of this court's jurisdiction by characterizing plaintiffs' appeal as the impermissible appeal of the district court's interlocutory order of referral to the ICC. Although this issue is not worthy of extensive discussion, we note that a significant difference exists between our more usual review of a district court sitting in judgment as a trial court and our review of a district court acting as an appellate tribunal in bankruptcy. This distinction has caused many circuit courts to adopt more relaxed definitions of a final district court order in bankruptcy if, as is the case here, a bankruptcy court already has entered a final order. See, e.g., Sambo's Restaurants, Inc. v. Wheeler, 754 F.2d 811, 813-15 (9th Cir.1985); In re Marin Motor Oil, Inc., 689 F.2d 445, 449 (3d Cir.1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983)
 
 
 [2]
 Defendant Delaware Valley Shippers also advances a jurisdictional argument. Delaware Valley contends that plaintiffs' appeal as to it should be dismissed because plaintiffs failed to seek review of the ICC's decision within the ninety-day time period specified in 28 U.S.C. § 1336(c). The short answer to the argument is that plaintiff did not appeal from the ICC's decision, but from the district court's entry of summary judgment
 
 
 [3]
 If the district court finds that the language of this tariff provision applies to any of the charges at issue in these cases, the parties are bound by the tariff's terms. An unambiguous and duly published tariff is "binding on the parties and has the force of law ... regardless of the intentions of the parties or the equities existing between carrier and shipper." Farley Transp. Co. v. Santa Fe Trail Transp. Co., 778 F.2d 1365, 1372 (9th Cir.1985); see also National Van Lines, Inc. v. United States, 355 F.2d 326, 331 (7th Cir.1966)
 
 
 [4]
 The dissent argues that when, as in this case, the carrier is in bankruptcy, our decision today "may well leave the complaining shipper without a remedy" because "[a]n independent reparations action might conclude after the termination of the bankruptcy proceedings, leaving a shipper with an ICC determination of unreasonableness that is unenforceable because the assets of the debtor's estate had been distributed earlier." Dissent, p. 113, n. 3. We disagree. Under the Bankruptcy Code as it now stands, the shipper who is required by our ruling today to pay the full tariff rate, and who then argues that this rate is unreasonably high, would stand in the same position as a shipper who had complied with the law by paying the full tariff rate in the first instance. The Bankruptcy Code defines a claim to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed." 11 U.S.C. § 101(5)(A). "By this broadest possible definition ... [the Code] contemplates that all legal obligations of the debtor, no matter how remote or contingent will be able to be dealt with in the bankruptcy case." H.Rep. No. 595, 95th Cong. 1st Sess. 309 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787. The right to reparation for payments under an unreasonably high tariff rate, see 49 U.S.C. §§ 11705(b)(3), 10701(a), would constitute a pre-petition contingent, unliquidated, and disputed claim against the bankruptcy estate. See Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir.1988), cert. dismissed, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972. As a general unsecured creditor, the complaining shipper would have the right to be paid a pro rata share of his claim along with the carrier's other unsecured creditors. 11 U.S.C. § 726(a)(2), (b). If waiting for an ICC determination of unreasonableness would "unduly delay" distribution of the bankruptcy estate, the value of the shipper's reparations claim would be estimated in the bankruptcy proceeding. 11 U.S.C. § 502(c)(1) ("There shall be estimated for purpose of allowance under this section--(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.") In sum, the dissent's concern for the shipper who must deal with a bankrupt carrier is unfounded. The Bankruptcy Code provides adequate relief
 In the response to this note, at note 3, the dissent asserts that "there is no question" that in "an undercharge action by a non-bankrupt carrier" the shipper would be entitled to assert an unreasonable rate defense. Therefore, it argues, the shipper also should be allowed to assert the defense when the claim is brought by the trustee for a bankrupt carrier. Contrary to this assertion, however, there not only is a question whether a shipper can assert the unreasonable rate defense in an undercharge action by a non-bankrupt carrier, this is the very question that we address in our opinion today. To reiterate: "We are of opinion that a defense attacking the reasonableness of a carrier's filed rates should not operate to stay enforcement of the filed rate doctrine. Rather, shippers must pay the filed rates and contest those filed rates before the ICC independently if they wish to seek reparations from the carrier." Majority opinion at 110. It is apparent, once we get beneath the bankruptcy veneer, that the dissent simply disagrees with the majority holding in this case.
 
 
 [1]
 Upon remand, the district court in Maislin did stay proceedings and referred the rate issue to the ICC. Maislin Industries, U.S. v. Primary Steel, 1990 WL 264536 (W.D.Mo. Nov. 21, 1990) (unpublished)
 
 
 [2]
 The term "reparations" was changed to "damages" in 1978. Pub.L. 95-473, 92 Stat. 1451 (1978)
 
 
 [3]
 The majority establishes the following procedure for cases of this kind: (1) the shipper first pays to the bankruptcy trustee the difference between the negotiated rates paid and the filed rate; (2) the shipper's assertion of an unreasonable rate is treated as an unsecured claim against the bankruptcy estate; (3) the bankruptcy court estimates the value of this claim by determining the reasonable rate; and (4) the shipper receives, along with other unsecured creditors, a pro rata share of his claim. Op. at 111, n. 4. Presumably, the independent reparations action before the ICC continues apace. See Op. at 110. Should the ICC eventually determine that the filed rate was not reasonable (and, therefore "not enforceable," Maislin, 110 S.Ct., at 2767), it is not clear what the shipper's remedy is at that point. Even if the bankruptcy action is still pending, the only effect would be to substitute the ICC's determination for the bankruptcy court's estimate of the claim's value
 I believe this stands the matter on its head. It is the bankruptcy trustee who is making a claim against the shipper; the shipper, in turn, has asserted the defense of "unreasonable rate." If the shipper is correct, the filed rate is "not enforceable," id., and the trustee should receive nothing more than the unpaid portion of the reasonable rate. The majority, however, would give automatic judgment to the trustee and make the shipper pay a possibly unreasonable, unlawful and unenforceable rate. After this rate is paid, the shipper is left with a claim against the estate; even if the court estimates the value of this claim as the full difference between the negotiated rate and the filed rate, the shipper can only receive a pro rata share with the other unsecured creditors, an amount likely to be substantially less than the "claim" itself.
 As the majority correctly notes, this procedure puts these shippers in the same position as those that had paid the filed rate initially. The majority ignores the fact that in the cases involving negotiated rates, the shippers are asserting a defense. See Delta Traffic Service, Inc. v. Transtop, Inc., 902 F.2d 101, 104 (1st Cir.1990) ("Because shippers may assert the unreasonableness of a rate as grounds for recovery in a reparations suit, courts ordinarily have permitted shippers to assert this same ground as a defense in a carrier's suit to collect the filed ('legal') rate.") (citing United States v. Western Pac. R.R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), and other cases). In an undercharge action by a non-bankrupt carrier, there is no question that the shipper would be entitled to assert this defense. In an undercharge action brought as an adversary proceeding by a bankruptcy trustee, I see no reason why the defense should be disallowed. See Bankruptcy Rule 7008. That this places the negotiated-rate shippers in a somewhat better position than the filed-rate payors is not a basis for eliminating the defense of rate unreasonableness. See Delta Traffic Service, Inc. v. Georgia-Pacific Corp., 936 F.2d 64 (2nd Cir.1991) (ordering district court to separately maintain the amount paid by the shipper as the difference between the negotiated and filed rates until rate reasonableness issue resolved by ICC).