**DELTA TRAFFIC SERVICE, INC., and Campbell 66 Express, Inc., Plaintiffs,**

v.

**The MENNEN COMPANY f/k/a Jerhard Mennen Chemical Co., Defendant.**

**Civ. No. 88–1737 (HLS).**

United States District Court, D. New Jersey.

Jan. 18, 1990.

**1310**

Daniel J. Sweeney, McCarthy, Sweeney & Harkaway, P.C., Washington, D.C., for defendant.

Robert B. Walker, Sims, Walker & Sternfeld, P.C., Washington, D.C., for plaintiffs.

## AMENDED OPINION

SAROKIN, District Judge.

On October 28, 1988, the court determined that the I.C.C. had primary jurisdiction to decide the validity of the tariff upon which plaintiffs' claim is based. The I.C.C. subsequently issued an order declaring that the disputed tariff constitutes an unreasonable practice under the Interstate Commerce Act. Now the parties, plaintiffs Delta Traffic Service ("Delta") and Campbell 66 Express, Inc. ("Campbell 66") and defendant The Mennen Company ("Mennen"), have filed cross-motions for summary judgment. The I.C.C. has intervened in support of defendant's motion. Plaintiffs request summary judgment on the grounds that the I.C.C. decision is arbitrary and capricious and that the filed rate doctrine applies; whereas defendant moves for summary judgment relying upon the I.C.C.'s determination that the rate in question was invalid.

*Factual Background*

This dispute concerns the effective rate for motor carrier services which Campbell 66 performed for Mennen in 1985 and early 1986. In 1980 Campbell 66 established a 35% discount on its motor carrier services. In 1985, the carrier filed a new rate which provided that in the event that a shipper submitted late payments, its discount would be forfeited. Although Campbell 66 accepted late payments at the discounted rate, the carrier and its auditor in bankruptcy, Delta Traffic Service, now seek payment for "undercharges" on services performed during the period. During the period at issue Campbell did not notify defendant of this loss-of-discount provision. Mennen paid the amount that Campbell billed at the time of shipments, and Campbell accepted payment without in any way indicating that these payments were deficient.

On October 28, 1989 the court granted Mennen's motion to stay this action and to allow the Interstate Commerce Commission

to exercise its primary jurisdiction to determine the reasonableness of the disputed tariff. The court referred three issues to the Commission: first, whether the Campbell 66 loss-of-discount provision violates or is inconsistent with the Commission's rules or constitutes an unreasonable practice; second, whether Mennen was entitled to and received notice of the disputed loss-of-discount provision; and finally, whether the loss of discount on these shipments would result in unreasonable charges, rates or practices.

In a unanimous decision of August 28, 1989, the I.C.C. found for Mennen on two of these grounds:

> that the loss-of-discount provision violated the credit rules in effect at the time [of the shipments] and that to apply it would constitute an unreasonable trade practice. [And that] [h]ad Campbell 66's loss-of-discount provision been permissible under the Commission's credit regulations at the time, Campbell 66 would have been in violation of 49 C.F.R. 1320.-3.

*The Mennen Co. v. Campbell 66 Express, Inc. and Delta Traffic Service, Inc.*, No. MC–C–30135, at 6 (August 28, 1989) [hereinafter *"I.C.C. Decision"*]. The Commission reasoned that "it necessarily follows that the loss of discounts on the involved shipments would result in an unreasonable practice." *Id.* at 7. Therefore, because of these two findings, the I.C.C. declined to reach the issue of whether the resulting rates and charges are substantively unreasonable. *Id.*

The Commission found the following facts, which are essentially unchallenged by the parties:[1]

In April of 1984 Campbell published a 35 percent discount covering the Mennen shipments which are the subject of this dispute. (Tariff I.C.C. CAML 635, *I.C.C. Record*, at 90, 92). The published discount was not conditioned on prompt payment of bills. Mennen participated in this program. On July 22, 1985, Campbell published an amended tariff which added to the discount provision the condition: "Discounts will apply only on shipments when payment of freight charges is made within the credit period as defined by the Interstate Commerce Commission." (Tariff I.C.C. CAML 635–A, *I.C.C. Record*, at 97). The credit period is defined by the Commission as 15 days. *I.C.C. Decision*, at 2. This tariff was in effect until Campbell 66 filed for bankruptcy on April 14, 1986.

Mennen continued to participate in the 35% discount program until Campbell 66 filed for bankruptcy. Plaintiffs allege that Mennen made late payments of its credit bills during the period from July 1985 until April 1986. However, Campbell 66 accepted defendant's payments without complaint during the period. Furthermore, the Commission found that during this period, "[Mennen] received neither any notices of late payments nor any claims or invoices based on the ... loss-of-discount note [tariff 635–A]." *I.C.C. Decision*, at 2.

When Campbell 66 filed for bankruptcy in April of 1986, it hired Delta to conduct an audit of Campbell's freight bills. That audit concluded that Mennen had underpaid freight charges by $24,769. In December of 1986, Mennen began receiving undercharge claims alleging that it had forfeited discounts with Campbell by failing to comply with the Commission's 15–day credit period. Plaintiffs made undercharge claims against Mennen for 501 shipments in the amount of $24,769. Mennen refused payment, and this suit followed.

*Legal Discussion*

Congress has granted the Commission exclusive authority to establish rules governing the extension of credit by carrier to shippers. 49 U.S.C. sec. 10743. The I.C.C.'s organic statute, the Interstate Commerce Act, contains a very broad grant of authority, and places few limits on the power of the Commission to determine the reasonableness of covered rates and practices.

---

**1.** Because no hearing is required for declaratory order proceedings, the substantial evidence standard of 5 U.S.C. sec. 706(2)(E) is inapplica-ble. In any case, neither party takes issue with the facts found by the Commission.

**1312**

■ Under the APA, a court may set aside a final agency determination only if it is "arbitrary, capricious, or not in accordance with the law." 5 U.S.C. sec. 706(2)(A).[2] Under this narrow scope of review, the court may not substitute its judgment for that of the Commission where the Commission's decisions are supported by adequate findings. *Illinois Central Ry. v. Norfolk & W. Ry.*, 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966). However, the Commission must examine data relevant to its decision and articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Assn. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Plaintiffs have failed to demonstrate an inadequate basis for the I.C.C.'s decision.

*Requirement of Notice*

■ The Commission found that Campbell 66 did not notify Mennen that it had published an amended tariff eliminating the 35% discount when payment was not made within the 15 day credit period. The record supports that finding. (*See* Statement of Randy Miller, *I.C.C. Record*, at 10). Indeed, plaintiffs do not dispute this. Instead they argue, as they did before the Commission, that publication of the tariff combined with notice that Mennen's bills would be delinquent if not paid within fifteen calendar days satisfied the I.C.C. rules. (Defendant's Br., at 7).

The I.C.C. determined that Campbell's means of notice violated 49 C.F.R. 1320.-3(c). That subsection provides:

*Bills or accompanying written notices shall state credit time limits and service charge and discount terms.* When credit is extended, freight bills or a separate written notice accompanying a freight bill or a group of freight bills presented at one time shall state the time limit by which payment must be made and any applicable service charge and discount terms.

Rather than directly disputing the applicability of this provision, plaintiffs focus exclusively on language from the comment to the 1985 I.C.C. order establishing the notice rule applied by the Commission. This clause exhorts shippers to "stat[e] that payment must be mailed by a specific date." (Reply, at 7 citing *Payment of Rates and Charges of Motor Carriers,* Ex Parte No. MC–1, para. 37,142, at 47,555–56 (January 4, 1985)). Plaintiffs assert that Campbell complied with this requirement, and therefore satisfied the notice requirement of section 1320.3(c).

Plaintiffs' extremely limited reading of the comment ignores that the clause upon which they rely by its very terms deals only with "credit term notices," *id.* at 47,-555, and that the preceding paragraph states unequivocally that "[i]nforming the shipper of credit terms is a fundamental necessity ..." *Id.* In any case, the plain language of section 1320.3(c), cited above, provides explicitly that bills shall state service charges and discount terms.[3]

The Commission's decision with regard to notice is entirely compatible with its rules, and is not arbitrary and capricious. Although the I.C.C.'s finding with regard to the notice requirement is sufficient to make the tariff unenforceable, the court will turn to the Commission's other ground of decision.

*The Loss-of-Discount Provision*

■ The Commission also found that the disputed provision in Tariff 635–A was a loss-of-discount provision, and that it constituted an unreasonable trade practice under the Commission's rules applicable during 1985 and 1986. (*I.C.C. Decision,* at

**2.** The parties do not dispute that the Commission's declaratory order is subject to an arbitrary and capricious standard of review. *See Carriers Traffic Service, Inc. v. Anderson Clayton & Co.,* 881 F.2d 475, 478 n. 3 (7th Cir.1989).

**3.** The Commission also observed that even under the amendment to its credit regulations,

which took effect on October 20, 1989 and allowed notice within ninety days after expiration of the authorized credit period, Campbell 66's December 1986 notice of the alleged undercharges was not timely. *I.C.C. Decision* at 7 n. 4. citing *Payment of Rates and Charges,* served July 21, 1989. In any case, this provision does not have retroactive effect.

5–6). Plaintiffs argue that this determination was arbitrary and capricious under the rule set forth in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (agency's decision must be "based on consideration of the relevant factors and whether there has been a clear error of judgment") and *Burlington Truck Lines v. United States,* 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) (agency orders should be set aside where there is no analysis or announced basis justifying the agency's decision). First, they assert that the I.C.C. did not adequately explain why Tariff 635–A was a "penalty," rather than an "incentive for early payment," as plaintiffs contend.[4]

The court is satisfied that the I.C.C. adequately justified this determination. The Commission explained that the disputed provision was a "penalty" rather than an "incentive" because Campbell 66 had already established "a tariff discount … not tied in any way to prompt payment of bills" and because since 1980 "few shipments moved at the full tariff rates and discounts were the order of the day." *I.C.C. Decision,* at 5. This finding is also supported by the Commission's observation later in its opinion that the loss of a 35% discount is "a severe penalty that is not related to the cost of credit." *Id.* at 6. These justifications adequately support the Commission's conclusion, and lend substance to what might otherwise be a formalistic distinction.

Second, plaintiffs argue both that the Commission did not explain why it invalidated the loss-of-discount provision under the 1985 rules, yet allowed a similar provision to stand in a 1987 order,[5] and specifically authorized the use of loss-of-discount provisions in a 1988 amendment to its cred-

it rules.[6] (Plaintiffs' Br., at 6). They appear to contend that the Commission had an obligation to explain the reasons for its subsequent change in policy, and that the I.C.C.'s decision was arbitrary in light of the Commission's 1987 ruling allowing a similar conditional discount provision to stand. Plaintiffs offer no authority supporting their argument. The court rejects it.

■ Plaintiffs' argument ignores the statutory context in which the Commission adjudicates and establishes rules. As the Commission mentioned in its opinion, under 49 U.S.C. sec. 10743, a carrier may not extend credit unless authorized by the Commission's regulations. *I.C.C. Decision,* at 2. Thus, absent a Commission rule specifically authorizing loss-of-discount provisions, such provisions are unreasonable within the meaning of the Act.

Plaintiffs fail to identify any such rule or regulation. Instead, Delta and Campbell 66 merely point to Commission rules and orders which post-date the rules applied to this case. The very 1988 credit rule changes upon which plaintiffs rely specifically state that they have prospective effect only. *See Payment of Rates and Charges—Penalty for Nonpayment,* 4 I.C.C.2d 340, 348 (1988). Furthermore, agency rules can only be changed prospectively, unless Congress authorizes retroactivity. *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

Moreover, the 1987 order upon which plaintiffs rely was an informal, non-final order of dubious precedential effect. In *Friedman's Express,* the Commission simply declined to suspend and to investigate the lawfulness of a loss-of-discount provision. As a discretionary decision under 49

---

**4.** "Incentives" or discounts for early payment were authorized under the Commission's rules of the period. *See* 49 C.F.R. 1320.2(f) (1985).

**5.** Plaintiffs rely here on *Payment of Freight Charges Friedman's Express,* Suspension Case No. 71366 (served July 14, 1987) (Plaintiffs' Br., Exh. F) [hereafter *"Friedman's Express"*]. As will be discussed below, that decision merely declined without opinion to suspend and inves-

tigate a tariff which contained a loss-of-discount provision.

**6.** Plaintiffs do not contend that the Tariff constituted a service charge on late payments. Service charges were authorized by the 1985 and 1986 version of 49 C.F.R. 1320.2(f). Loss-of-discount provisions were not. *Id.* (Plaintiffs' Br., Exh. B).

U.S.C. sec. 10708, the Commission's decision not to take action was not "a final decision that the tariff was lawful." *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 452, 99 S.Ct. 2388, 2393, 60 L.Ed.2d 1017 (1979). Under 49 U.S.C. sec. 11705(b)(3), the shipper in that case was free to file a formal action. As the Commission explained both in the instant case and in the 1988 credit rules decision upon which plaintiffs rely, *Friedman's Express* "was only a informal ruling at the suspension stage and carriers little, if any, precedential weight." *Regulations for Payment of Rates and Charges—Penalty Charges for Nonpayment*, Ex Parte No. MC–1 (not printed), decided March 25, 1987 (cited in *I.C.C. Decision*, at 5). No further explanation was necessary, given the presumption against retroactivity. For the purposes of this declaratory order, the Commission considered all the relevant factors.

*The Parties' Motions for Summary Judgment*

 Under the filed rate doctrine a tariff filed with the Commission must be enforced by a court unless it constitutes an unreasonable rate or practice. *Louisville & N.R.R. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Plaintiffs, relying on this doctrine, characterize their action as "a straight collection case." (Plaintiffs' Br., at 1). However, because the court does not find the determination of the I.C.C. arbitrary and capricious or not in accordance with law, it concludes that the application of Tariff 635–A to Mennen is unreasonable. Accordingly this doctrine does not apply, and plaintiffs' motion for summary judgment is denied.

Conversely, 49 U.S.C. sec. 10701(a) provides that motor carrier rates must be reasonable. Because the credit provision upon which plaintiffs rely has been ruled unreasonable by the Commission, that provision is unenforceable. Accordingly, Mennen "is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(e), and summary judgment is appropriate.[7]

*Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's motion is denied.

---

7. Plaintiffs cite two decisions, *I.C.C. v. American Trucking Assn., Inc.*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984) and *Genstar Chemical Ltd. v. I.C.C.*, 665 F.2d 1304 (D.C.Cir.1981), for the proposition that the Commission may not retroactively nullify a tariff. The court finds plaintiffs' reliance on these decisions inapplicable. *American Trucking* in fact found that the Commission had the power to reject retroactively an effective tariff because that power was adjunct to the Commission's rejection power of 49 U.S.C. sec. 10762(e) and was necessary to achieve compliance with the Commission's rules regarding rate bureau agreements. 467 U.S. at

364–65, 104 S.Ct. at 2464. *Genstar* relied specifically on two factors which in this case point toward rejecting plaintiffs' argument: deference to the Commission's expertise, and the lack of harm to the plaintiff (who in that case was quoted a tariff increase of 14% when the Commission had only approved a 12% increase). 665 F.2d at 1309–10. Campbell's settled expectations have not been disturbed by this decision. Prior to its bankruptcy, it did not demand payment at the undiscounted rate. Finally, unlike in either decision, the relief sought here is not complete nullification of a tariff, but the elimination of one item of the tariff.