In re OLYMPIA HOLDING CORPO-
RATION, a/k/a P–I–E Nation-
wide, Inc., et al., Debtors.

Lloyd T. WHITAKER as Chapter 7 Trust-
ee for Olympia Holding Corporation,
a/k/a P–I–E Nationwide, Inc., Plaintiff,

v.

YOUNKERS, INC., a Delaware
corporation, Defendant.

Bankruptcy Nos. 90–4195–BKC–
3P7, 90–4223–BKC–3P7.
Adv. No. 91–448.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 15, 1992.

See also 141 B.R. 443, 139 B.R. 565.

W. Kelsea Wilber, Jacksonville, Fla., Kim
D. Mann, Washington, D.C., for plaintiff.

David E. Otero, Jacksonville, Fla., Mi-
chael P. Mallaney, Des Moines, Iowa, for
defendant.

Ruth A. Harvey, Washington, D.C., for
Department of Justice.

Gardner Davis, Jacksonville, Fla., for
trustee.

FINDINGS OF FACT AND
CONCLUSIONS OF
LAW

GEORGE L. PROCTOR, Bankruptcy
Judge.

This adversary proceeding came to be
heard upon the Motion of Defendant for
Referral to the Interstate Commerce Com-
mission. A hearing was held on December
13, 1991. Upon the evidence presented, the
Court makes the following Findings of
Fact and Conclusions of Law:

## Findings of Fact

Debtor was both a motor common and motor contract carrier operating in interstate commerce pursuant to the authority of the Interstate Commerce Commission ("ICC").

Debtor filed tariffs with the ICC which provided for a Class 70 exception rate with a discount of 55–59% off of that Class 70 exception rate. Subsequent to the filing of such tariff rate, debtor filed tariff item 721 stating that any customer not paying its bill within 60 days of the date of the invoice would lose its class exception and its discount ("loss-of-discount tariff").

Debtor filed a chapter 11 petition on October 16, 1990. Lloyd T. Whitaker was appointed as chapter 11 trustee on December 26, 1990. The case was subsequently converted to chapter 7 on March 11, 1991, and Lloyd T. Whitaker was appointed the chapter 7 trustee.

Defendant, as shipper, and Debtor, as common carrier, did business together on a tariff basis for a substantial amount of time.

In late November and early December of 1990, a dispute arose between debtor and defendant. Defendant claimed approximately $14,000.00 against debtor for goods lost or damaged in shipment and withheld payment on the shipping bills.

Plaintiff conducted an audit of debtor's records and determined that the original amounts billed were not properly rated in accordance with the filed tariff. Accordingly, the plaintiff sent new bills to defendant which did not include the class exception or the discount and which were rerated at the full class rates. The rerated bills represented an increase in rates from the original bills of at least 65–69%. Plaintiff based the change on the loss-of-discount tariff. Defendant refused to pay the rerated bills.

On June 20, 1991, plaintiff filed this adversary proceeding seeking turnover of property and a money judgment for $31,-516.48, based on the rerated bills. Defendant filed an answer raising the defenses of set-off and unreasonable rates and asked that the proceeding be referred to the ICC. With plaintiff's consent, defendant later filed an amended answer asserting further defenses, as well as a counterclaim for damages.

Defendant contends that 1) the tariff rates on which plaintiff relies are inapplicable to the shipments in question; 2) if the rates do apply, they are unreasonable and unlawful under 49 U.S.C. § 10701(a); 3) the tariff rules violate 49 U.S.C. § 10761 and ICC regulations contained in 49 C.F.R. Part 1320; and 4) some sums sought by plaintiff were not demanded until after the requisite time periods of 49 C.F.R. parts 1320.2(e)(2) and (3), 1320.2(g)(2)(vi).

Plaintiff, on the other hand, argues that 1) this Court does not have jurisdiction under 28 U.S.C. § 1336(b) to make a referral to the ICC; 2) referral is not necessary because defendant must pay the filed rate and then seek reparations; 3) the loss-of-discount tariff does not violate ICC credit regulations, and 4) violation of the credit regulations is not a defense to enforcement of filed tariff rates.

Thus, the Court must initially determine whether it has the authority under 28 U.S.C. § 1336 to refer any issue to the ICC. If the Court does have such power, the question arises as to whether the issues raised in this proceeding must be resolved by the administrative agency and if so, at what point in time must such a determination be made.

## Conclusions of Law

### A. Referral Power

■ Congress provided in 28 U.S.C. § 1334(b) that "... district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Under 28 U.S.C. § 157(a), the district court may provide that any or all cases or proceedings arising under title 11 shall be referred to the bankruptcy judges. The United States District Court for the Middle District of Florida has entered such a referral order. Rule 104, Local Rules for the Middle District of Florida. Accordingly, this bankruptcy case and this adversary

proceeding have been referred to this Court.

The district court's jurisdiction to refer issues to the ICC is embodied in 28 U.S.C. § 1336, which provides in relevant part:

(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures.

(b) When a district court or the United States Claims Court refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.

Under the district court's referral order, the bankruptcy court is sitting in the adversary proceeding as a unit of the district court. Thus, for purposes of 28 U.S.C. § 1336, "district court" includes the bankruptcy court. *Railway Labor Executives' Assn. v. ICC*, 894 F.2d 915 (7th Cir.) *reh'g denied*, 908 F.2d 127 (7th Cir.1990); *In re Total Transportation, Inc.*, 84 B.R. 590 (D.Minn.1988). Accordingly, this Court has jurisdiction to refer the issues at hand to the ICC.

It should also be noted that although his brief argues to the contrary, plaintiff's counsel stated during the hearing that this Court has "the power to refer matters to any federal agency, including the ICC." (Transcript at page 9).

### B. Primary Jurisdiction

■ The doctrine of primary jurisdiction serves to ensure that the courts provide administrative agencies charged with specific regulatory responsibilities the appropriate opportunity to fulfill such duties. The United States Supreme Court explained the doctrine:

"Primary jurisdiction," ... applies where a claim is originally cognizable in the courts and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body....

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*United States v. Western P.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (citing *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361 (1940)). The Court then indicated that the doctrine was intended to promote uniformity and consistency, as well as provide expert and specialized knowledge when resolving administrative questions. *Id.; Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952).

■ The issues in this proceeding primarily involve the validity of the loss-of-discount tariff and the reasonableness of the filed rate. In *Western P.R. Co.* the Court also indicated that where the issue merely involved construction of a tariff, courts could decide it as an issue "solely of law." *Western P.R. Co.*, 352 U.S. at 66, 77 S.Ct. at 166. Thus, as long as discretion in technical matters requiring a knowledge of intricate facts is not being exercised, a court may decide the issues.

The Court of Appeals for the Seventh Circuit has held that "... courts have original jurisdiction to interpret tariffs, rules, and practices where the issue is one of violation, rather than reasonableness." *Interstate Commerce Com. v. All–American, Inc.*, 505 F.2d 1360, 1363 (7th Cir. 1974).

■ The defendant contends that the loss-of-discount tariff is unlawful because it does not comply with ICC credit regulations. Plaintiff argues that the credit reg-

ulations are irrelevant and that the loss-of-discount tariff is merely a condition precedent to participation in the discount programs. Accordingly, the issue involves either a violation of regulations or tariff interpretation, both of which are within the original jurisdiction of this Court.

The Supreme Court has indicated that jurisdiction to determine the reasonableness of rates is vested with the ICC: " 'The [Interstate Commerce] Act altered the common law by lodging in the Commission the power theretofore exercised by courts, of determining the reasonableness of a published rate.' " *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, ——, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94 (1990) (quoting *Arizona Grocery Co. v. Atchison, T. & S.F.R. Co.*, 284 U.S. 370, 384, 52 S.Ct. 183, 184, 76 L.Ed. 348 (1932)). The question of the reasonableness of debtor's filed rates should be properly decided by the ICC.

Both the parties admit that the ICC is the expert body vested with the authority to resolve a legitimate issue of rate reasonableness. However, the parties differ on their assessment as to when such a determination is properly made.

### C. Rate Reasonableness

■ Currently the Circuit Courts of Appeal are split on the issue of when the ICC should determine whether a filed rate is reasonable. The first, third, seventh, and eighth circuits adhere to the stay and refer approach. *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101 (1st Cir.1990); *Delta Traffic Service, Inc. v. Mennen Co.*, 730 F.Supp. 1309 (D.N.J.), *aff'd*, 919 F.2d 134 (3rd Cir.1990); *Western Transportation Co. v. Wilson & Co.*, 682 F.2d 1227 (7th Cir.1982); *Atlantis Express, Inc. v. Standard Transp. Services, Inc.*, 955 F.2d 529 (8th Cir.1992). Those circuits hold that the judicial proceeding must be stayed and the issue of rate reasonableness referred to the ICC for determination. In so holding the cases necessarily recognize rate reason-

ableness as a defense to a proceeding to collect the filed rate.

The fourth and fifth circuits, on the other hand, hold that rate reasonableness cannot be used as a defense. *In re Carolina Motor Express, Inc.*, 949 F.2d 107, 110–11 (4th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992); *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 391–92 (5th Cir.1989). The cases indicate that the shipper must pay the filed rate and then the exclusive remedy for recovering excess charges is through the statutory reparations action. At that time the ICC would determine the reasonableness of a given rate.

Neither the District Court for the Middle District of Florida nor the Court of Appeals for the Eleventh Circuit has spoken on this issue. This Court finds that the rationale behind the holdings in the fourth and fifth circuits is more persuasive and, thus, holds that rate reasonableness is not properly asserted as defense to collection of the filed rate.

Prior to the enactment of the Motor Carriers Act of 1935, common law recognized a shipper's right to restitution for unreasonable charges. *Arizona Grocery Company v. Atchison, T. & S.F.R. Company*, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); *Arkadelphia Milling Company v. St. Louis S.R. Co.*, 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919). Subsequent to such enactment, it was assumed that the savings clause, 49 U.S.C. § 316(j),[1] provided the basis for a continued right of restitution.

However, the United States Supreme Court subsequently held that the restitution remedy afforded shippers under common law had not survived. *T.I.M.E. Incorporated v. United States*, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). In holding that a shipper could not challenge the reasonableness of a rate in post-shipment litigation, the Court left shippers without any remedy when a filed rate was found to be unreasonable.

---

**1.** Section 316(j) provides: "Nothing in this section shall be held to extinguish any remedy or right of action; not inconsistent herewith."

Congress recognized the problem and enacted 49 U.S.C. § 304a in 1965 in an effort to provide shippers with relief. Section 304a provided that shippers could recover overcharges by filing an action at law for "reparations" within a certain time period. The section specifically defined reparations as damages resulting from charges based on a tariff found to be unreasonable by the ICC. Section 304a has since been recodified as 49 U.S.C. §§ 11705(b)(3) and 11706(c)(2), which read, in relevant part:

§ 11705. Rights and remedies of persons injured by certain carriers.

(b)(3) A common carrier providing transportation or service subject to the jurisdiction of the Commission under subchapter II or IV of chapter 105 of this title or a freight forwarder is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle.

§ 11706. Limitation on actions by and against common carriers.

(c)(2) A person must begin a civil action to recover damages under section 11705(b)(3) of this title within 2 years after the claim accrues.

The statute, by its terms, provides a procedure through which a shipper may challenge a filed rate and recover "reparations" for excessive amounts paid. The scheme does not provide for the use of the right to reparations as a defense. The sole and exclusive remedy provided is a post-payment challenge to the rate reasonableness accompanied by a request for reparations. *In re Carolina Motor Express, Inc.*, 949 F.2d 107, 110–11 (4th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992); *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 391–92 (5th Cir.1989); *Mohasco Industries, Inc. v. Acme Fast Freight, Inc.*, 491 F.2d 1082, 1085 (5th Cir.1974); *Lifschultz Fast Freight, Inc. v. Rainbow Shops, Inc.*, 784 F.Supp. 89, 93 (S.D.N.Y.1992) ("The very characterization of the remedy in the statute—'reparations'—suggests a rule of pay first and sue later.").

Rejection of reasonableness as a defense may lead to a harsh result, but it is the result dictated by the terms of the statute. In addition, it serves to support the filed rate doctrine espoused by the United States Supreme Court:

The rate of a carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it. . . . Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. The rule is undeniably strict, and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville & N.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). The Supreme Court recently reiterated the importance of the filed rate doctrine in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, ——, 110 S.Ct. 2759, 2766–67, 111 L.Ed.2d 94 (1990).

By refusing to allow the defendant to assert rate reasonableness as a defense, the Court not only adheres to the statutory scheme, but also protects the filed rate doctrine and its underlying policy of discouraging price discrimination.

### D. Conclusion

This Court has the jurisdiction to refer the issues raised to the ICC, but concludes that such referral is inappropriate at this time. Although the ICC has primary jurisdiction over rate reasonableness questions and is the proper body to make such determinations, rate reasonableness is not a defense to a proceeding to collect the filed rate. Defendant's sole remedy for excessive charges is through the statutory reparations action.

A separate order denying defendant's motion for referral to the ICC will be entered.