In the Matter of BROWN TRANSPORT TRUCKLOAD, INC., Brown Transport Corp., Thurston Motor Lines, Inc., Debtors.

Robert E. BRIZENDINE, Trustee on Behalf of the Bankruptcy Estate of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc., Plaintiff,

v.

BEATRICE/HUNT–WESSON, INC., Defendant.

Bankruptcy Nos. A89–12515, A89–12517 and A89–12521.
Adv. No. 91–6926A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 1, 1992.

T. Gordon Lamb, Lamb and Associates, Atlanta, Ga., for plaintiff.

Thomas W. Rhodes, Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, Atlanta, Ga., and Robert J. Bothe, McGrath, North, Mullin & Kratz, Omaha, Neb., and Peter A. Greene, Thompson Hine & Flory, Washington, D.C., for defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on Motion for Summary Judgment, filed in the above-referenced adversary proceeding by Robert E. Brizendine, the Trustee for the debtors in this proceeding, Brown Transport Corp., et al. ("Plaintiff"), and a Cross Motion for Summary Judgment or, in the Alternative, for Referral to the Interstate Commerce Commission ("ICC"), filed by Beatrice/Hunt–Wesson, Inc. ("Defendant"). This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitutes the Court's Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On October 31, 1989, Brown Transport Corp., et al. ("Brown") filed for bankruptcy protection under Chapter 11. Prior to the bankruptcy petition, Brown operated a trucking company, authorized to do business in interstate commerce pursuant to the rules and regulations of the ICC. Brown is authorized to operate as both a motor contract carrier and a motor common

carrier. On June 11, 1984, the ICC issued a permit which granted Brown the authority to serve as a contract carrier.

Brown, in its capacity as a motor carrier, transported approximately 43 shipments for Defendant during the period from 1987 through 1989. Brown and Defendant entered into a contract ("Contract") dated June 13, 1989, which provided for a discount rate of 54% to apply to certain rates published in Brown's tariff ICC BRNT 502, filed with the ICC. According to an Affidavit submitted by Jack R. Wiley, twenty-four (24) of the shipments were transported pursuant to the terms of the Contract.

On October 31, 1991, Plaintiff filed a Complaint against Defendant for Turnover of Property and for Money Judgment. The claim arose out of transportation services which were provided for Defendant. In the claim, Plaintiff sought to recover undercharges which were owed for transportation services provided for Defendant. Specifically, Plaintiff sought to recover the difference between its tariff rate filed in accordance with the applicable provisions of the Interstate Commerce Commission ("ICC") and the lower rate negotiated in the Contract between the parties, in which Defendant paid in full. 49 U.S.C. §§ 10761(a) and 10762. The requirements of § 10761(a) often is referred to as the filed rate doctrine.

On March 2, 1992, Plaintiff filed a Motion for Summary Judgment, asserting that Brown is entitled to collect the full tariff rate filed with the ICC as a matter of law. *See* 49 U.S.C. § 10761(a). According to an Affidavit submitted by Charles E. Shin ("Shin"), the amount of the undercharges owed to Brown's estate is $9,144.74. Additionally, Plaintiff asserts that Defendant is liable for pre-judgment interest pursuant to state law. On March 23, 1992, Defendant filed a response to Plaintiff's Motion for Summary Judgment and a Cross Motion for Summary Judgment or, in the Alternative, for Referral to the ICC. In the response, Defendant contends that Plaintiff has not met its burden in proving no issue of material fact. In the Cross Motion for Summary Judgment, Defendant asserts

that the requirement of filing rates with the ICC does not apply to contract carriers, and Brown transported the majority of the shipments in issue as a contract carrier. As for the shipments which pre-dated the Contract, Defendant contends that the shipments were charged pursuant to the discount rates published in the tariff ICC BRNT 608–A. In Defendant's Motion for Reference to the ICC, Defendant argues that Brown's filed rates with the ICC for its transportation services are unreasonable. Defendant asserts that the issue of rate reasonableness with respect to Brown's file rates are in the primary jurisdiction of the ICC.

In response to Defendant's Cross Motion for Summary Judgment, Plaintiff argues that the Contract does not satisfy the statutory and regulatory requirements of a contract carrier agreement and is therefore insufficient to establish a contract carrier arrangement. 49 U.S.C. § 10102(15)(B) and 49 C.F.R. § 1053.1. As for the shipments which pre-dated the Contract, Plaintiff contends that the tariff ICC BRNT 608–A did not apply to the original freight charges since ICC 608–A was cancelled on January 30, 1989. According to Shin, several of the shipments were subject to discounts contained in ICC BRNT 623 rather than ICC BRNT 608–A. Plaintiff also argues that the defense of rate reasonableness is not a legally sufficient defense to bar the collection of freight charges. Defendant maintains that Brown provided transportation services as a contract carrier and that the issue of rate reasonableness should be referred to the ICC.

## CONCLUSIONS OF LAW

Both Plaintiff and Defendant have filed motions for summary judgment with each arguing that it is entitled to judgment as a matter of law. In accordance with Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, this Court will grant a motion for summary judgment only when there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *on remand,* 826 F.2d 33 (D.C.Cir. 1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The movant has the burden to establish that no such factual issue exists, *Id.* at 324, 106 S.Ct. at 2553, and the Court will read the opposing party's pleadings liberally. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is a drastic remedy, to be granted when there is no room for controversy. *In re Earhart,* 68 B.R. 14, 15 (Bankr.N.D.Iowa 1986); *In re Heath,* 60 B.R. 338, 339 (Bankr.D.Colo.1986).

Plaintiff contends in its Motion for Summary Judgment that a common carrier must charge and receive the amount set forth in the tariffs on file with the ICC. The ICC requires that all motor common carriers publish and file tariffs containing their transportation rates. 49 U.S.C. § 10761(a). Under § 10761(a), a "carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff." *Id.* Plaintiff argues that once a rate is filed with the ICC by the carrier, both the carrier and the shipper are bound by the filed rate. *Lowden v. Simonds–Shields–Lonsdale Grain Co.,* 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953 (1939). Plaintiff also relies on a recent Supreme Court decision which found that the ICC shall not deviate from the filed rate doctrine. *Maislin Industries, U.S. Inc. v. Primary Steel,* 497 U.S. 116, 110 S.Ct. 2759, 2770–2771, 111 L.Ed.2d 94 (1990). Plaintiff maintains further that every party to the shipment is presumed to have constructive knowledge of the filed rate. *See Louisville & Nashville Railroad Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Based on the foregoing legal framework, Plaintiff asserts that Defendant is liable for the undercharges as a matter of law.

*I. Common Carrier Versus Contract Carrier*

■ Defendant asserts that Brown transported the majority of the shipments in issue as a contract carrier, and that the requirement of the filed rate doctrine does not apply to contract carriers. Plaintiff argues that the Contract does not satisfy the statutory and regulatory requirements of a contract carrier agreement and is therefore insufficient to establish a contract carrier arrangement. 49 U.S.C. § 10102(15)(B) and 49 C.F.R. § 1053.1. While § 10761(a) requires carriers to adhere to rates filed with the ICC, § 10761(b) states that the ICC may grant relief "to contract carriers when relief is consistent with the public interest and the transportation policy of section 10101 of this title." 49 U.S.C. § 10761(b). In exercising its statutory authority, the ICC has exempted contract carriers from the requirements of the filed rate doctrine. *Exemption of Motor Contract Carriers from Tariff Filing Requirements,* 133 M.C.C. 150 (1983), *aff'd sub nom. Central & S. Motor Freight Tariff Ass'n v. United States,* 757 F.2d 301 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). If Brown provided transportation services for Defendant pursuant to contract carrier authority, then Brown is not entitled to its rates filed with the ICC, and Plaintiff is not entitled to the undercharges.

A "motor contract carrier" is defined as: (B) a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B). As for the definition of "continuing agreements," the ICC had enacted the following regulation which provides:

No contract carrier by motor vehicle as defined in 49 U.S.C. [§] 10102(15) shall transport property for hire in interstate or foreign commerce except under special and individual contracts or agreements which shall be in writing, shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper and shippers, shall

cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments, and copies of which contracts or agreements shall be preserved by the carriers parties thereto so long as such contracts or agreements are in force and for at least one year thereafter.

49 C.F.R. § 1053.1.

In a recent decision, the ICC has decided to exercise its discretion and repeal § 1053.1 governing the requirements for "continuing agreements." ICC, Ex Parte No. MC–198, *Contracts for Transportation of Property*, 8 I.C.C.2d 520 (May 5, 1992). Even though the ICC repealed the regulation governing continuing agreements, the Contract still must meet the statutory requirements of § 10102(15)(B). In determining whether shipments are moved pursuant to contract carriage, the ICC stated that the totality of the circumstances must be examined, which includes "whether the transportation involved the use of dedicated equipment or a service tailored to meet the distinct needs of the shipper." *Id.* at 529.

■ Plaintiff relies on the fact that there is a written agreement between the parties, and that the transportation services were carried out pursuant to the terms of the Contract. The mere existence of a contract between a shipper and a carrier does not automatically establish the existence of contract carriage. *Dan Barclay, Inc., v. Stewart & Stevenson Services*, 761 F.Supp. 194, 203 (D.Mass.1991). Even an express provision in a contract stating that the transportation service is provided through contract carriage does not automatically establish contract carriage. In the present case, the Contract between Brown and Defendant does not include specifically a provision that the services were provided pursuant to contract carrier authority.

According to Plaintiff, the Contract fails to meet the requirements of § 10102(15) because there is no dedication of equipment for the exclusive use of Defendant and there were no specialized services designed to meet the distinct needs of Defendant. This Court is persuaded by Plaintiff's argument and concludes that the Contract between Brown and Defendant does not meet the statutory language of § 10102(15)(B). The Contract is written in very general terms. For example, the Contract allows for the transportation of freight of all kinds described in the National Motor Freight Classification. There is no indication in the Contract that the transportation services are designed to meet the distinct needs of Defendant. The Contract also does not specifically assign transportation vehicles for the exclusive use of Defendant. In fact, the Contract states that the provisions of the Contract between Brown and Defendant do not apply to exclusive use shipments. The Court finds that the Contract is nothing more than a common carrier agreement that has been reduced to a written contract. Thus, the transportation services provided pursuant to the Contract dated June 13, 1989, are subject to common carrier authority.

## II. The Different Filed Tariff Rates

■ As for the shipments which pre-dated the Contract, Defendant contends that the shipments were charged pursuant to the discount rates published in the tariff ICC BRNT 608–A. Plaintiff maintains that the tariff ICC BRNT 608–A did not apply to the original freight charges since ICC BRNT 608–A was cancelled on January 30, 1989. Plaintiff has established through an Affidavit by Charles E. Shin that the shipments which pre-dated the Contract were either shipped after the cancellation of ICC BRNT 608–A, subject to other tariffs, or subject to no applicable discount. Defendant has not provided this Court with either statutory or regulatory authority to refute the cancellation of ICC BRNT 608–A. The cancellation of ICC BRNT 608–A indicates that there are no conflicting tariffs applicable to the shipments in issue. Accordingly, Plaintiff has established the absence of any material issue of fact with respect to the pre-Contract shipments.

## III. Rate Reasonableness

■ Defendant has requested that this Court refer the issue of rate reasonable-

ness to the ICC. The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). There is no set formula for invoking the doctrine of primary jurisdiction, and the courts must undertake a case by case analysis into the reasons for applying the doctrine. *Id.* The reasons include "promotion of statutory and regulatory construction, and utilization of the agency's specialized knowledge." *Atlantis Express*, 955 F.2d at 532.

The Supreme Court has recognized that "the filed rate is not enforceable if the ICC finds the rate to be unreasonable." *Maislin*, 110 S.Ct. at 2767. The Supreme Court in *Maislin* also indicated that the jurisdiction to determine rate reasonableness is vested with the ICC: "The [Interstate Commerce] Act altered the common law by lodging in the Commission the power theretofore exercised by courts, of determining the reasonableness of a published rate." *Maislin*, 110 S.Ct. at 2767 (quoting *Arizona Grocery Co. v. Atchison, T. & S.F.R. Co.*, 284 U.S. 370, 384, 52 S.Ct. 183, 184, 76 L.Ed. 348 (1932)). Thus, the question of rate reasonableness should be properly decided by the ICC. Since the issue of rate reasonableness is within the primary jurisdiction of the ICC, Defendant argues that this issue must be referred to the ICC.

The question now becomes when should the ICC decide the issue of rate reasonableness. Defendant contends that rate reasonableness constitutes a defense to an undercharge claim which seeks to collect the filed rate. Moreover, Defendant argues that the issue of rate reasonableness, as a defense to an undercharge claim, should be referred to the ICC while the judicial proceeding is stayed pending the outcome of the rate reasonableness de-

fense. Thus, it is necessary for this Court to determine when the ICC should determine whether a filed rate is reasonable.

The circuit courts are split on the issue of when the ICC should determine whether a filed rate is reasonable. The first, second, third, seventh, and eighth circuits recognize the defense of rate reasonableness in a proceeding to collect the filed rate. *Atlantis Express, Inc. v. Standard Transp. Services*, 955 F.2d 529, 536 (8th Cir.1992) (allowing shipper the right to raise rate reasonableness as an adequate defense in situations where the shipper no longer has an adequate reparations remedy); *Duffy v. BMC Industries, Inc.*, 938 F.2d 353, 357 (2nd Cir.1991) (allowing shipper the right to raise rate reasonableness as an adequate defense where carrier did not bill the shipper more than two years after the shipments, which is beyond the two-year statute of limitations governing the reparations remedy); *Delta Traffic Service, Inc. v. Transtop, Inc.*, 902 F.2d 101, 104–106 (1st Cir.1990) (allowing shipper the right to raise rate reasonableness as an adequate defense in a carrier's suit to collect the filed rate); *Western Transp. Co. v. Wilson and Co., Inc.*, 682 F.2d 1227, 1231–1232 (7th Cir.1982); *Branch Motor Express Co. v. Caloric Corp.*, No. 89–1130, slip op. at 3–4 [914 F.2d 241 (Table)] (3rd Cir. Aug. 14, 1990) (implicitly recognizing a rate reasonableness defense, but denying ICC referral because the shipper failed to introduce any evidence of unreasonableness). By recognizing the rate reasonableness defense, the circuit courts stayed the judicial proceeding and referred the issue of rate reasonableness to the ICC.

In contrast, the Fourth and Fifth Circuits have concluded that the rate reasonable defense cannot be used as a defense. *Cooper v. Delaware Valley Shippers (In re Carolina Motor Express, Inc.)*, 949 F.2d 107, 110 (4th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992); *Supreme Beef Processors, Inc. v. Yaquinto (In re Caravan Refrig. Cargo, Inc.)*, 864 F.2d 388, 389–393 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). Under the rationale of the Fourth and Fifth circuits, ship-

pers must pay the undercharges based on the filed rates and then raise the reasonableness of the filed rates in a separate statutory reparations action. The court in *Carolina Motor Express* noted that the issue of rate reasonableness is not foreclosed since shippers may bring a statutory reparations action either before or after the undercharge suit. *Carolina Motor Express,* 949 F.2d at 110.

The Eleventh Circuit has yet to rule on whether rate reasonableness constitutes a defense in a proceeding to collect the filed rate. The district court for the Northern District Court of Georgia has determined that the issue of rate reasonableness is within the primary jurisdiction of the ICC and should be referred to the ICC for resolution. *Advanced–United Expressways, Inc. v. C.R. Bard, Inc.,* 731 F.Supp. 499, 500–01 (N.D.Ga.1990). In its decision to refer the issue of rate reasonableness to the ICC, the court recognized that rate reasonableness is a defense against an undercharge claim.

In a recent decision by the bankruptcy court in the Middle District of Florida, the court held that rate reasonableness is not a defense in a proceeding to collect the filed rate. *Whitaker v. Younkers, Inc. (In re Olympia Holding Corp.),* 142 B.R. 477, 481 (Bankr.M.D.Fla.1992). Similar to the present case, the plaintiff in *Olympia Holding Corp.* sought to recover undercharges based on tariff rates filed with the ICC. The court followed the rationale of the Fourth and Fifth Circuits by stating that the defendant's "sole remedy for excessive charges is through the statutory reparations action." *Id.* In refusing to allow rate reasonableness as a defense, the Court recognized the importance of the filed rate doctrine and its underlying policy of discouraging price discrimination. *Id.* at 481.

This Court also finds the rationale of the Fourth and Fifth Circuits more persuasive and concludes that the issue of rate reasonableness may not be asserted as a defense in a proceeding to collect the filed rate. Congress has specifically provided a procedure through which a shipper may challenge the unreasonableness of a filed rate. In 1965, Congress enacted 49 U.S.C. § 304(a) which provides shippers with an action of law for reparations in situations where there are damages resulting from tariffs found to be unreasonable by the ICC. Subsequently, Section 304(a) has been recodified as 49 U.S.C. §§ 11705(b)(3) and 11706(c)(2) which provide in pertinent part:

§ 11705. Rights and remedies of persons injured by certain carriers.

(b)(3) A common carrier providing transportation or service subject to the jurisdiction of the Commission ... is liable for damages resulting from the imposition of rates for transportation or service the Commission finds to be in violation of this subtitle.

§ 11706(c)(2). Limitation on actions by and against common carriers

(c)(2) A person must begin a civil action to recover damages under section 11705(b)(3) of this title within 2 years after the claim accrues.

The statute explicitly provides a procedure through which a shipper may challenge a filed rate as being unreasonable. This statutory scheme provides that the sole and exclusive remedy for challenging the unreasonableness of a filed rate "is a post-payment challenge to the rate reasonableness accompanied by a request for reparations." *Whitaker v. Younkers, Inc. (In re Olympia Holding Corp.),* 142 B.R. 477, 480–481 (M.D.Fla.1992); *See Carolina Motor Express,* 949 F.2d 107, 110–111; *Caravan Refrigerated,* 864 F.2d at 391–392. In following the statutory scheme, the issue of rate reasonableness may not properly be asserted as a defense in a proceeding to collect the filed rate.

The decision reached by this Court supports the Supreme Court's longstanding adherence to the filed rate doctrine. Under the filed rate doctrine, the Supreme Court has stated the following:

[T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with no-

tice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville & Nashville*, 237 U.S. at 98, 35 S.Ct. at 495–96. The Supreme Court in *Maislin* reiterated the importance of the filed rate doctrine and noted that the filed rate doctrine was necessary to prevent carriers from "intentionally 'misquoting' rates to shippers as a means of offering them rebates or discounts." *Maislin*, 110 S.Ct. at 2766. The court in *Carolina Motor Express* cautioned against automatically referring cases to the ICC because this "approach would provide a strong incentive for shippers routinely to contest the validity of the carrier's rates in order to delay paying the carrier's filed rate." *Carolina Motor Express*, 949 F.2d at 110.

While the rejection of rate reasonableness as a defense in a proceeding to collect the filed rate may lead to a harsh result, the result is one dictated by the terms of the statute. *Olympia Holding Corp.*, at 481. The statute does provide some relief for the shipper by allowing for the rate reasonableness issue to be heard in a separate reparations action. 49 U.S.C. §§ 11705(b)(3) and 11706(c)(2). Thus, the rejection of rate reasonableness as a defense follows from the statutory scheme as well as the Supreme Court's longstanding adherence to the filed rate doctrine. Rejection of the rate reasonableness defense and referral to the ICC leads to the conclusion that Plaintiff is entitled to summary judgment as a matter of law with respect to all 43 shipments since there are no material facts in issue.

### IV. Pre-judgment Interest

■ Plaintiff is entitled to recover prejudgment interest for the undercharges. The court in *Louisiana Railway Co. v.*

*Export Drum Co.*, 359 F.2d 311, 317 (5th Cir.1966) concluded that "in actions initiated in the federal district courts for undercharges on freight shipments, interest from the time the money is due (the date of the shipment) is a mandatory element of damages." To achieve uniformity in the amount of interest charge, this Court adopts the holding of *Southern Pacific Holding Trans. Co. v. San Antonio, Tex.*, 748 F.2d 266, 275–276 (5th Cir.1984), where the proper measure for calculating the interest rate is the ninety-day Treasury Bill in effect on the date the first payment is due. This approach allows for a "uniform, coherent practice in the area of railroad rates." *Id.* at 276.

### V. Conclusion

As for the shipments originally transported pursuant to the Contract, this Court concludes that shipments were transported pursuant to common carrier authority. This Court also finds that Plaintiff is entitled to summary judgment as a matter of law with respect to the shipments that predated the Contract. Since the rate reasonableness defense is not available for Defendant, this Court finds that Plaintiff is entitled to summary judgment as a matter of law with respect to those shipments. Plaintiff is allowed to recover the undercharges plus pre-judgment interest in accordance with this opinion.

Accordingly, Plaintiff's Motion for Summary Judgment is hereby GRANTED. Defendant's Motion for Summary Judgment is hereby DENIED. Defendant's Motion for Referral to the ICC of the rate reasonableness issue is hereby DENIED. A separate judgment shall be entered accordingly.

IT IS SO ORDERED.